[Crim. No. 7428.   First Dist., Div. Two.   June 18, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. BOBBY G. SEALE, Defendant and Appellant.

Jarvis, Miller & Stender, Hugh B. Miller and R. Jay Engel for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Michael J. Phelan, Deputy Attorneys General, for Plaintiff and Respondent.

AGEE, J.—Defendant was charged and convicted by the court sitting without a jury, the same having been waived, of violating Penal Code section 4574, in that on May 22, 1967, he knowingly brought a firearm onto grounds adjacent to the Oakland city jail.

The cause was by stipulation submitted for decision on the testimony of Officer Crain of the Oakland Police Department, given at the preliminary hearing, and two diagrams of the

scene, one offered by the prosecution and the other by the defense. A summary of Officer Crain's testimony follows.

On May 22, 1967, about 2 p.m., in response to a radio call, he arrived in his marked patrol car at the entranceway to the Oakland city jail, located at 611 Broadway. Officer Carlson arrived in his owned marked patrol car at the same time. Both were in police uniform.

There is a 3-line sign at the top of the entranceway. The top line reads "OAKLAND POLICE DEPT"; the second line reads "JAIL"; the third line reads "611." The letters in "JAIL" are larger than the others and are from 10 to 12 inches high.

Defendant was sitting on a retaining wall near the front of the jail door holding a 12-gauge shotgun between his knees. He was about 3 feet from the door. The muzzle of the gun was pointed upwards.

There were 10 or 12 other people in the area, some of whom were armed. One of these was Sherwin Forte, who had a loaded automatic pistol in a belt around his waist. Forte was 6 or 7 feet from the jail doorway. (Forte was jointly charged with defendant but defendant was tried separately.)

Officer Carlson asked defendant for the shotgun; defendant brought the weapon up to a port arms position and stated that he had a right to it.

Officer Carlson took the gun from defendant. It was found to be loaded and the shells were removed. The bullets in Forte's automatic were also removed.

*Sufficiency Of Evidence As To Defendant's Knowledge That He Was On Ground Adjacent To Jail*

The information is couched in the language of that portion of the statute (Pen. Code, § 4574) which applies to the particular factual situation herein. It alleges that defendant and Forte "did knowingly bring fire arms and deadly weapons on to ground adjacent to the Oakland City Jail."

Section 4574 provides in pertinent part as follows :[1]

[1]Section 4574 reads in full as follows: "Except when otherwise authorized by law, or when authorized by the person in charge of the prison or other institution referred to in this section or by an officer of the institution empowered by the person in charge of the institution to give such authorization, any person, who knowingly brings or sends into, or knowingly assists in bringing into, or sending into, any state prison or prison road camp or prison forestry camp, or other prison camp or prison farm or any other place where prisoners of the state prison are located under the custody of prison officials, officers or employees, or any jail or any county road camp in this State, or within the grounds belonging or adjacent to any such institution, any firearms, deadly weapons or explosives,

"[A]ny person, who knowingly brings . . . into . . . any jail or any county road camp in this State, or within the grounds . . . adjacent to any such institution, any firearms, deadly weapons or explosives" is guilty of a criminal offense.

■ Defendant argues that the evidence is insufficient to support the trial court's conclusion that he had *knowledge* that he was on grounds adjacent to the city jail.

It would have been difficult for the trial court to conclude otherwise. In order to reach the position where he was when the officers arrived, defendant would have had to walk directly toward the entrance door over which appears the sign "City Jail" in letters 10 to 12 inches high. By selecting a position 3 feet away from that doorway, it is reasonable to conclude that defendant knew that he was just outside of the entrance to the jail. Certainly, the trier of fact was justified in reaching such conclusion.

Evidence Code section 600, subdivision (b), provides: "An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action."

We think that the *undisputed* facts in the instant case and the inferences that "may logically and reasonably be drawn" therefrom sufficiently support the trial court's conclusion that defendant knew the location of the city jail and that he was on ground adjacent thereto. *There was no evidence offered or received in support of the defense of lack of such knowledge.*

As to the other elements of the offense, defendant can hardly argue that a point 3 feet away from the jail is not on "ground adjacent" thereto or that defendant did not know that he had a loaded shotgun in his possession.

### Defendant's Intent

■ We disagree with defendant's contention that the prosecution was required to prove that, in bringing the loaded shotgun to the jail doorway, he had to have the specific intent "to facilitate the escape of any prisoner or inmate confined therein."

The quoted language, used by defendant in making this contention, is taken from Penal Code section 4535, *with which defendant is not charged.* This section provides: "Every per-

and any person who, while lawfully confined in a jail or county road camp possesses therein any firearm, deadly weapon, or explosive, is guilty of a felony and punishable by imprisonment in the state prison for not less than one year."

son who carries or sends *into* a prison or jail anything useful to aid a prisoner or inmate in making his escape, *with intent* thereby to facilitate the escape of any prisoner or inmate confined therein, is guilty of a felony. . . ." (Italics added.)

Witkin comments on the difference between the two sections, stating that "P.C. 4574 . . . *differs* from P.C. 4535, supra, in that . . . it [§ 4574] requires only *knowledge* . . . and *not specific intent*." (2 Witkin, Cal. Crimes (1963) p. 815; italics added.)

Defendant made no pretrial attack upon the sufficiency of the allegations of the information, either by demurrer or otherwise. The information charged defendant only with "knowingly" doing the proscribed act. *Unlawful* or *evil* intent is not a necessary element of the offense denounced in section 4574.

In *People* v. *Dillon*, 199 Cal. 1 [248 P. 230], the defendant was the commissioner of finance for the City of Fresno and, as such, acted as its purchasing agent. He was charged and convicted of misuse of public funds in that, in the city's name and with its funds, he bought articles for his friends at prices lower than were available to them. The friends would then reimburse the city.

In sustaining the conviction, the Supreme Court stated: "To render a person guilty of crime it is not essential to a conviction that the proof should show such person to have entertained any intent to violate law. [Citations.] It is sufficient that he intentionally committed the forbidden act." (P. 7.)

In *People* v. *Gory*, 28 Cal.2d 450, 453 [170 P.2d 433], the Supreme Court stated: "Sometimes an act is expressly prohibited by statute, in which case the *intentional doing of the act*, regardless of good motive or ignorance of its criminal character, constitutes the offense denounced by law. Instances illustrating this principle may be found in statutes enacted for the protection of public morals, public health, and the public peace and safety. [Citation.] If a specific intent is not made an ingredient of the statutory offense, it is not necessary to prove such specific intent in order to justify a conviction."

### *Constitutionality of Section 4574*

■ Defendant points out that a violation of Penal Code section 4535 expressly requires proof of a specific intent, i.e., "with intent . . . to facilitate the escape of any prisoner." He complains that he "could just as easily and properly been charged under § 4535 [instead of § 4574] and the necessity then of proving a specific intent would be clear."

Thus, defendant argues that, by charging him under section 4574, the prosecution avoided the necessity of proving specific intent, and he was thereby discriminated against and was denied equal protection of both federal and state law.

One of the answers to this argument is immediately apparent. Defendant could not have been charged under section 4535. It provides: "Every person who *carries or sends into a prison or jail* anything useful to aid a prisoner or inmate in making his escape, with intent thereby to facilitate the escape of any prisoner or inmate confined therein, is guilty of a felony. . . ." (Italics added.)

There is absolutely no evidence that defendant carried or sent anything into the jail and therefore he could not have been charged under section 4535.

In *People v. Bevins* (1960) 54 Cal.2d 71 [4 Cal.Rptr. 504, 351 P.2d 776], cited and relied upon by defendant, a conviction under section 4574 was reversed because of the failure of the trial court to give an instruction on the law of accomplices. (Pen. Code, § 1111.) By way of dictum, the court went on to say that section 4574 not only punishes one who *brings* a firearm into a jail but also punishes one who *sends or causes to be sent* a firearm into a jail.

Defendant herein relies upon the following language in the *Bevins* case: "Defendant claims that such a construction of section 4574 makes superfluous section 4535 of the same code which specifically punishes bringing *or sending* into a jail a thing useful in aiding a prisoner to escape with intent to facilitate such escape. It is apparent, however, that section 4535 is different from section 4574 in that the former punishes the sending of a large number of items into a prison whereas section 4574 proscribes only deadly weapons. Concomitantly, section 4535 contains a requirement of specific intent which is lacking in section 4574 for the obvious reason that the latter section deals with firearms, concerning which an unlawful intent may be presumed. Thus, both sections may be reasonably held to proscribe sending as well as bringing into a jail certain objects without either section being thereby rendered superfluous."

All that *Bevins* says is that in the factual situation involved therein, it made no difference whether the defendant was charged with violating section 4574 or section 4535 because the specific intent "lacking [as a requirement] in section 4574" was supplied by a *presumption* of such intent because the proscribed item was a firearm. (This case was

decided before the effective date of the Evidence Code; see section 600 as to presumptions.) *Bevins expressly* states that specific intent is not a necessary element of the offense defined in section 4574.

■ Defendant also cites the Second Amendment of the United States Constitution as giving him the right to bear arms. Our Supreme Court has recently stated, in *Galvan* v. *Superior Court* (1969) 70 Cal.2d 851, 866 [76 Cal.Rptr. 642, 452 P.2d 930]: "The claim that legislation regulating weapons violates the Second Amendment has been rejected by every court which has ruled on the question. . . . It is long since settled in this state that regulation of firearms is a proper police function."

The general rule applicable herein is stated in 94 C.J.S. page 474, as follows: "The provision of the federal Constitution guaranteeing the right of the people to keep and bear arms constitutes a limitation on the federal government alone, so that a state legislature in the absence of similar provisions in the organic law, is free to regulate the manner of bearing arms, although it may lack the power entirely to destroy the right."

In the case of *In re Rameriz,* 193 Cal. 633 [226 P. 914, 34 A.L.R. 51], the Supreme Court pointed out that "It is a well-recognized function of the legislature in the exercise of the police power to restrain dangerous practices and to regulate the carrying and use of firearms and other weapons in the interest of the public safety." (P. 650.)

With reference to "the right of the people to keep and bear arms," as provided by the Second Amendment, the court said: "It will suffice to state that this point is without merit, since this amendment offers no protection against the exercise of power by the state governments but applies only to the exercise of power by the federal government." (P. 651.)

*Section 4574 Encompasses Act Performed Outside of Jail*

■ In the face of its plain wording, defendant asserts that "Penal Code § 4574 clearly does not intend to encompass an act performed outside of the jail." He bases this contention on the wording of the *title* to such section, which is "Firearms, deadly weapons or explosives; bringing into prison, camp, jail, etc.; punishment."

The section itself expressly provides that it is a criminal offense for any person to knowingly bring or send into "any jail or . . . the *grounds* belonging or *adjacent to any such institution,* any firearms, . . ." (italics added). Undoubtedly

the "etc." following "jail," as set forth in the title, was intended to refer to the words following "jail," the pertinent ones being those emphasized above. We see no merit in the point.

█ Defendant correctly points out that he was convicted for an act committed "within the grounds . . . adjacent to any such institution [jail]." He claims that the words, "adjacent," "any such institution," and "grounds," as used in section 4574 are ambiguous, vague and uncertain. We do not agree.

The defendant was sitting on a concrete retaining wall which encloses a planter strip running along the front of the building proper. He was 3 feet from the building.

█ "Adjacent" is a word in common usage and is defined as "near" or "close." (Webster's New World Dictionary.) █ We submit that there can be no vagueness or uncertainty with respect to whether the planter strip was within the grounds adjacent to the jail building.

█ The fact that there may arise marginal cases in which it is difficult to determine whether certain ground is "adjacent" to a prison or jail is not a sufficient reason to hold that the use of such word makes the statute unconstitutionally vague and uncertain. (*Davis* v. *Municipal Court* (1966) 243 Cal.App.2d 55, 58 [52 Cal.Rptr. 189].) All that is required is reasonable certainty. (*People* v. *Victor,* 62 Cal.2d 280, 300 [42 Cal.Rptr. 199, 398 P.2d 391].)

Defendant next states that "the reference [in section 4574] to 'any such institution,' refers to a 'county road camp in this state' for it is only a county road camp which would have 'grounds.' " This was not so at the Oakland city jail, as the evidence shows, and it is not so in many other localities.

The lower court suspended the imposition of sentence and granted the defendant's application for probation. █ An order granting probation is deemed to be a final judgment for purposes of appeal. (Pen. Code, § 1237, subd. 1.) We shall so treat the "Notice of Appeal" in this case.

The order granting probation is affirmed.

Shoemaker, P. J., and Taylor, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 17, 1969.