[Crim. No. 7244. Third Dist. July 10, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM DALE EVANS, Defendant and Appellant.

## Counsel

Harold C. Wright, under appointment by the Court of Appeal, Brown, Wright & Kucera and Jeffrey A. Kaufman for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, James T. McNally and Brian Taugher, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**REGAN, J.**—An information was filed in the superior court charging defendant with assault with a deadly weapon (Pen. Code, § 245) and

possession of a firearm by a person convicted of a felony (Pen. Code, § 12021). He was also charged with a prior conviction.

After a trial by jury, defendant was convicted on the second count, possession of a firearm by a felon. The jury was divided nine to three for acquittal on the assault charge and a mistrial was declared. After sentencing, this count was dismissed in the interests of justice. He appeals from the judgment on count two.

## FACTS

In the early morning hours of May 30, 1973, defendant was working as a trainee dispatcher for the Yellow Cab Company in Oroville. William Heaton, a cab driver, was on duty but was sleeping on a couch.

At approximately 4:45 a.m., a call came in for a cab. Defendant gave the call to another driver. Heaton, who had awakened, became irate because he was not given the call and an argument ensued.

According to Heaton's testimony, defendant called him a "lazy bastard" and told Heaton, "I'll beat your ass, punk." Heaton asked him not to use such language and started moving toward the dispatch desk shaking his finger. While about eight to ten feet from the desk, Heaton saw defendant reach into a desk drawer and pull out a gun. Defendant fired the gun hitting Heaton in the cheek.

Defendant gave a somewhat different version. He was ill that night but had to work. When defendant gave the 4:45 call to another driver, Heaton accused him of giving his (Heaton's) call away and told him he (defendant) had been picked up off skid row. Defendant became ill and started to gag into the wastebasket. He looked up and saw Heaton standing there shaking, and making a move toward him. Defendant reached into a desk drawer for a flashlight but his hand fell on a gun. He fired the gun at Heaton when he was about a foot and one-half away because he thought Heaton was not going to stop. Defendant testified that he could not fight Heaton off because he was sick. On cross-examination, defendant admitted that Heaton had not verbally threatened him or doubled up his fists.

The owner of the cab company testified that defendant had complained of illness prior to the incident. The owner also testified that the gun (which belonged to him) had been in the desk drawer for 17 or 18 years. The owner thought defendant "as well as everybody in his organization" knew of the gun.

A police officer testified defendant had stated it was common knowledge the gun was loaded and that defendant had checked it and was aware there were five live rounds in the gun's cylinder.

Defendant contends the provisions of Penal Code section 12021 deprive him of his constitutional right of self-defense.

The facts belie such an argument. The circumstances of the case strongly support the Legislature's wisdom in enacting a gun control law. A petty argument almost led to murder. The testimony of the defendant, a portion of which we recite, is damning:

"Q. [Prosecutor] Is it fair for me to interpret your testimony that when you did shoot you were glad you did shoot?

"A. [Defendant] I was glad that he was turned around and running the other way.

"Q. That isn't my question. I'm going to keep asking it until you answer it.

"Were you glad that you shot that pistol? That revolver?

"A. I, the only thing I could tell you I'm glad he stopped. I, I couldn't say that I was glad I shot. I'm glad he stopped. If that shot stopped him I'm glad I shot him."

The crime of violating section 12021 of the Penal Code had been violated before defendant had made *use* of the gun. The language of the court in *People* v. *Neese* (1969) 272 Cal.App.2d 235, 245 [77 Cal.Rptr. 314], is apropros: "Penal Code section 12021 requires no specific criminal intent. [Citations.] The elements of the instant offense are (1) conviction of a felony and (2) ownership, possession, custody or control of a firearm capable of being concealed on the person [citations]; and general intent to commit the proscribed acts is all that is necessary. [Citations.] . . .

" 'Possession of [a gun] may be proved circumstantially and it is not necessary to show that the accused was in exclusive possession of the premises. [Citations.]"

The gun had been in the desk drawer for the several months that defendant had worked there, and defendant knew of its presence. The crime of which he stands convicted was complete when he armed himself prior to the shooting.

Defendant contends Penal Code section 12021 is unconstitutionally overbroad as it seeks to punish the convicted felon for possession of a concealable firearm where the threat of death or serious bodily injury is imminent.

The facts of this case clearly substantiate the commission of the crime when defendant armed himself *prior* to the shooting incident. Viewed in this light, the theory of self-defense is irrelevant and we are not required to determine whether the statute is or is not, in such a context, overbroad. (See *People* v. *Garcia* (1950) 97 Cal.App.2d 733, 734 [218 P.2d 837].) The incident that occurred here is the very thing the Legislature was seeking to prevent. As stated in *People* v. *Washington* (1965) 237 Cal. App.2d 59, 66 [46 Cal.Rptr. 545]:

"Penal Code, section 12021, is part of the legislative scheme originally promulgated in 1917 (Stats. 1917, ch. 145, p. 221, § 1.) and commonly known as the Dangerous Weapons Control Act. In addition to section 12021, which in practice has been applied principally to cases involving persons convicted of a prior felony, [citation] the Legislature established controls over other weapons commonly used for criminal purposes, such as blackjacks, billyclubs and brass knuckles (§ 12020); provided stiffer penalties for those who commit a felony while armed with a weapon prohibited by the Act (§ 12022); and provided for the confiscation and destruction as nuisances of all such prohibited weapons (§§ 12028 and 12029). The clear intent of the Legislature in adopting the weapons control act was to limit as far as possible the use of instruments commonly associated with criminal activity. [Citation] and, specifically, *'to minimize the danger to public safety arising from the free access to firearms that can be used for crimes of violence.'* [Citations.]" (Italics added.)

■ Defendant next asserts the provisions of the statute precluding the use of a concealable firearm where the threat of death or serious bodily harm is imminent constitute a denial of due process of law. He contends the statute violates his right to self-defense guaranteed by the California Constitution. (Art. I, § 1; cf. *People* v. *Curtis* (1969) 70 Cal.2d 347, 357 [74 Cal.Rptr. 713, 450 P.2d 33]; *People* v. *McDonnell* (1917) 32 Cal.App. 694, 705 [163 P. 1046].)

The contention has no merit. It has long been established that regulation of firearms is a proper police function. (*Galvan* v. *Superior Court* (1969) 70 Cal.2d 851, 866 [76 Cal.Rptr. 642, 452 P.2d 930]; *In re Ra-*

*meriz* (1924) 193 Cal. 633, 651-652 [226 P. 914, 34 A.L.R. 51].) Even if defendant should equate this right with a right to bear arms under the Second Amendment, it would still not aid his cause. (*Ibid.; People* v. *Seale* (1969) 274 Cal.App.2d 107, 114 [78 Cal.Rptr. 811.)

The answer to defendant's contention is found in *People* v. *Camperlingo* (1924) 69 Cal.App. 466, 473 [231 P. 601], where the court states: "It therefore becomes apparent that the right of a citizen to bear arms is not acquired from any constitutional provision, and while it may be said that by the operation of the statute under consideration a citizen is deprived of one of his natural rights in that his ability to better defend himself from personal violence if offered will be somewhat lessened, such right is no greater than or different in character from any other natural right possessed by him. It is clear that in the exercise of the police power of the state, that is, for the public safety or the public welfare generally, such rights may be either regulated or, in proper cases, entirely destroyed. Acting within the scope of such power, the legislature, by a proper classification of its citizens, has declared that persons heretofore convicted of a felony shall not possess firearms, and while such citizens are thus deprived of a natural right, in the judgment and discretion of the legislature such deprivation tends directly to the accomplishment of the desired end. As has been indicated by the authorities cited herein, a reasonable basis exists for the classification of citizens of the state in the manner provided by the statute, and there can be no question of the uniformity of its operation upon all persons within the designated class."

An ex-felon's right to defend himself remains, but he is prevented from the use of firearms. This is a legitimate legislative end and does not deny due process. (*Galvan* v. *Superior Court, supra,* 70 Cal.2d at pp. 868-869; *In re Rameriz, supra,* 193 Cal. at p. 652.)

Defendant contends the statute is a denial of equal protection since it treats some convicted felons differently than others. (See *Reed* v. *Reed* (1971) 404 U.S. 71 [30 L.Ed.2d 225, 229, 92 S.Ct. 251].) He claims this difference in treatment arises because self-defense is not a defense to section 12021 but that it is a defense to section 4502, which prohibits prisoners from possessing certain specified weapons.

Defendant contends a prisoner may well be excused for a violation of section 4502 under circumstances involving imminent danger to his well being. One case so held in dicta. In discussing this case the court in *People* v. *Purta* (1968) 259 Cal.App.2d 71, 74 [66 Cal.Rptr. 38], states as follows: "In *Wells* [68 Cal.App.2d 476, 480-481 (156 P.2d 979)] there

is a suggestion that there may be a valid proper defense to the charge of violating section 4502 since the opinion states that a defendant 'has the burden of proving as a matter of defense, that he is not carrying the weapon in violation of the statute.' (Page 481.) It is difficult to reconcile this statement with the appellate court's holding that section 4502 'absolutely prohibits all prisoners in any state prison, without qualification, from possessing or carrying on their persons certain designated deadly weapons.' No case in this state, moreover, has indicated the nature of a proper valid defense to the charge of violating section 4502, although in *Crenshaw* there is a suggestion that, while normally the right of self-defense is not recognized as a defense to a charge of violating that section, a prisoner might be justified in seizing one of the prohibited weapons in order to protect himself if he were confronted with an emergency situation and his life were endangered. We think that with the possible exception of such an emergency situation, the only proper valid defense is that the prisoner was using or possessing a sharp instrument under circumstances showing that such instrument was required for the performance of his duties. (See *People* v. *Morales, supra,* 252 Cal.App.2d at p. 541.) This conclusion is impelled by the policy considerations hereinbefore alluded to which require that the possession of weapons or instruments by prison inmates be kept within narrow limitations."

Other appellate decisions have picked up the *Wells'* dicta. (*People* v. *Evans* (1969) 2 Cal.App.3d 877, 881-882 [82 Cal.Rptr. 877]; *People* v. *Steely* (1968) 266 Cal.App.2d 591, 595 [72 Cal.Rptr. 368]; *People* v. *Wells* (1968) 261 Cal.App.2d 468, 478-479 [68 Cal.Rptr. 400].) To our knowledge, however, no case (including those above cited) holds that self-defense *is* a defense to a violation of section 4502, even under severely limited circumstances. If there is no right of self-defense, of course, the equal protection argument must fail. Under the facts of this case, we decline to change dicta into substantive law.

Even assuming, however, that self-defense is available under section 4502, there is a rational classification between the two statutes. Section 4502, which relates to custodial supervision of inmates, prohibits possession of virtually all implements and weapons which could inflict bodily injury, and therefore is a substantial infringement of any alleged right of self-defense in the prison setting. Section 12021, on the other hand, only restricts potentially concealable firearms. Ex-felons thus have a variety of other weapons (or devices) available to them should they be attacked.

Defendant contends that if Penal Code section 12021 is construed to excuse the convicted felon whose sole purpose in arming himself is to

defend himself where the threat of danger is imminent, then the instructions given here were erroneous and prejudicial.

The self-defense instructions given here were not specifically related to the second count. The instructions were given in the following sequence: assault with a deadly weapon; self-defense; and, possession of a firearm by a person who has been convicted of a felony. Thus, it was not clear whether the self-defense instructions applied to both counts.

Nevertheless, as we have previously stated, we decline to change dicta into substantive law (governing a violation of § 12021), particularly under the facts of this case. It was therefore unnecessary to instruct on self-defense with regard to a violation of section 12021.

The judgment is affirmed.

Richardson, P. J., and Puglia, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 5, 1974.