[No. A089051. First Dist., Div. Two. Dec. 11, 2000.]

WARREN E. RUPF, as Sheriff, etc., Plaintiff and Respondent, v. ALEXANDER ALMELIA YAN, Defendant and Appellant.

**COUNSEL**

W. Michael Becker for Defendant and Appellant.

Victor J. Westman, County Counsel, and Beatrice Liu, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**KLINE, P. J.—**

### INTRODUCTION

Welfare and Institutions Code section 8102 authorizes the confiscation and possible forfeiture of firearms or other deadly weapons from persons

taken into custody for evaluation of their mental condition under Welfare and Institutions Code section 5150.[1]

Appellant Alexander Almelia Yan challenges the constitutionality of section 8102 on its face and as applied to him. He argues there is no relation between the legislative intent behind the statute and its application and that it is vague and overbroad. He further argues that the court erred in admitting hearsay evidence and in basing its decision thereupon. Finally, he contends the court's determination that return of the firearms would be likely to result in endangering himself or other persons is unsupported by substantial evidence.

### FACTS AND PROCEDURAL BACKGROUND

On May 10, 1998, Deputy Sheriff Richard Fuller was called to Doctor's Hospital in San Pablo following an incident involving appellant at his home. Fuller detained appellant for a mental evaluation pursuant to section 5150 because he concluded that appellant was a danger to himself. Fuller based his conclusions upon the totality of circumstances he learned from an emergency medical technician (EMT) at the scene, medical staff, appellant himself, and appellant's mother and sister. These facts included the following:

Appellant's mother made an emergency 911 call after hearing a thump in the bathroom and finding appellant on the floor. An EMT responded to the call and found appellant in a drug-induced state. Appellant admitted to Fuller that he had been depressed about work and school. He admitted he had deliberately taken approximately four pills of carisoprodol, a prescription painkiller or relaxant drug, commonly referred to as Soma. Medical staff at the scene of the incident believed appellant had taken more than four pills. Appellant's mother and sister told Fuller appellant had been under stress. His sister said the pill bottles found at the scene belonged to appellant and that she had discovered the bottle marked carisoprodol in appellant's bathroom. Two bottles of carisoprodol were found at appellant's home, one empty bottle and one bottle marked with a capacity of 500 tablets. Fuller counted 382 tablets remaining in that bottle. Appellant admitted at the hearing that he did not have a prescription for the carisoprodol.

Based upon the information Fuller received from witnesses, including appellant himself, Fuller concluded appellant was depressed. In his 21 years as a peace officer, it was Fuller's experience that depression sometimes is a precursor to a suicide attempt. During the course of his investigation, Fuller

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise stated.

learned from an EMT that numerous firearms were located at appellant's home. Fuller went to appellant's home later that day. He found four semi-automatic firearms with attached magazines loaded with live ammunition. Specifically, Fuller found two loaded semiautomatic rifles in the closet, one loaded semiautomatic pistol on the bed and one loaded semiautomatic pistol under a pillow. Fuller confiscated the firearms pursuant to section 8102.

Appellant was detained under section 5150 for three days for observation at Merrihew Memorial Hospital and Herrick Hospital. He was released on May 13, 1998, without a judicial commitment.

On June 10, 1998, respondent Contra Costa County Sheriff's Office filed a "Petition Seeking Judicial Determination Re Return of Firearm or Deadly Weapon" pursuant to section 8102 and notified appellant of the filing of the petition. On June 29, 1998, appellant filed a demurrer to the petition together with exhibits and points and authorities. Appellant also sought return of the $180 filing fee he had been required to pay. Following several continuances at appellant's request, a hearing was held on May 26, 1999. At the hearing, the sheriff's case was based upon the declaration of Deputy Sheriff Maureen Bailey, which contained information she had received from Fuller. (No transcript of that hearing is contained in the record.) The matter was taken under submission. On June 2, 1999, the court issued a ruling that the filing fee requirement was contrary to current law and that the fee be returned to appellant. It also ruled that the firearms should not be returned. Appellant sought a rehearing on the grounds that he had not had an opportunity to confront or cross-examine Fuller, who had not been present at the initial hearing. On June 15, 1999, the court stayed its previous order to allow appellant the opportunity to cross-examine the witnesses against him and ordered respondent to present any officer upon whose testimony or statement it was relying in requesting confiscation. The rehearing was continued at appellant's request, and was finally conducted on September 1, 1999.

At the hearing, Fuller testified as to his observations and conclusions, and statements made to him by the EMT, medical staff, appellant, appellant's sister and mother. His sheriff's report was also admitted into evidence.

Appellant testified he never fired the two rifles and did not consider the firearms to be high-powered weapons and that they were not loaded, as there was no bullet in the chamber of any of the firearms. He claimed he wanted the guns back because he studied them from a historical point of view and used them for shooting at a range. He also testified that after the weapons confiscation, he had worked for a time as an armed security guard. His then employer did not know about the May 1998 incident where he was detained

under section 5150 and did not require appellant to undergo a mental evaluation. He further testified that he had not tried to commit suicide, that the pills were for a recurring pain, and that he had never been seriously depressed. The court ruled from the bench, finding that in the circumstances, return of the firearms would pose a threat to appellant and to others and granted the respondent sheriff's petition. On October 11, 1999, the court issued a "Statement of Decision and Order" granting respondent's petition and ordering that the confiscated firearms not be returned to appellant. The order granting the sheriff's petition contained several findings of fact and concluded that "the return of the firearms to appellant would be likely to result in endangering [him] or other persons. It is inappropriate for assault weapons to be in the hands of a mentally unstable person." This timely appeal followed.

## DISCUSSION

### I. *Constitutionality of section 8102.*

A. *Statutory and decisional background.*

Section 8102 provides in pertinent part: "(a) Whenever a person, who has been detained . . . for examination of his or her mental condition . . . is found to own, have in his or her possession or under his or her control, any firearm whatsoever . . . the firearm . . . shall be confiscated by any law enforcement agency or peace officer, who shall retain custody of the firearm . . . . [¶] . . . [¶] (b) Upon confiscation . . . the peace officer or law enforcement agency shall notify the person of the procedure for the return of any firearm . . . which has been confiscated. [¶] Where the person is released, the professional person in charge of the facility . . . shall notify the person of the procedure for the return of any firearm . . . which may have been confiscated. [¶] Health facility personnel shall notify the confiscating law enforcement agency upon release of the detained person . . . . [¶] (c) Upon the release of a person as described in subdivision (b), the confiscating law enforcement agency shall have 30 days . . . to initiate a petition in the superior court for a hearing to determine whether the return of a firearm . . . would be likely to result in endangering the person or others, and to send a notice advising the person of his or her right to a hearing on this issue." In *Bryte v. City of La Mesa* (1989) 207 Cal.App.3d 687 [255 Cal.Rptr. 64] (*Bryte*), the Court of Appeal found a former and very different version of the statute unconstitutional as it violated state and federal procedural due process standards by permitting peremptory seizure of property, but did not contain within its own ambit a provision for administrative review. The existence of a collateral judicial remedy was deemed insufficient to satisfy due process because the person whose firearms had been

confiscated was required to initiate proceedings in the superior court to obtain the return of the property, including preparing formal pleadings, paying a filing fee, and participating in all the formal procedural devices of the superior court. (*Id.* at pp. 690-691.) Moreover, the statute contemplated placing the burden of proof on the person seeking return of the firearms, rather than upon the seizing authority. (*Id.* at p. 691, fn. 4.) In 1989, the Legislature amended the statute to remedy the defects identified by *Bryte*.[2] (See *People v. One Ruger .22-Caliber Pistol* (2000) 84 Cal.App.4th 310 [100 Cal.Rptr.2d 780].) "Under the current statute, the firearms must be returned unless the law enforcement agency timely files a petition to determine whether returning the firearms 'would be likely to result in endangering the person or others, and [sends] a notice advising the person of his or her right to a hearing on the issue.' (§ 8102, subds. (c) & (g).)" (*Id.* at p. 313.) Moreover, unlike the former statute, section 8102 places the onus upon law enforcement to initiate the forfeiture proceeding, and to bear the burden of proof on the issue of the danger presented by return of the weapons. (§ 8102, subd. (c).) These provisions satisfy the procedural due process deficiencies identified by the Court of Appeal in *Bryte*. (*People v. One Ruger .22-Caliber Pistol, supra,* at pp. 313-314.)

B. *Substantive due process claim.*

█ Appellant first argues the statute is unconstitutional as there is no relation between the legislative intent behind the statute and its application. Although not entirely clear, it appears appellant's claim is that section 8102 is facially invalid and denies him substantive due process under our state and federal Constitutions. (Cal. Const., art. I, § 7; U.S. Const., 5th & 14th Amends.)

█ The standard of review for this claim is well settled. The legislative scheme may not be arbitrary or capricious, but must have a real and substantial relationship to the goal sought to be obtained. (*Coleman v.*

---

[2]"Section 3 of Stats. 1989, c. 921, provides:

" 'This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting the necessity are:

" 'It is essential that a constitutionally sound mechanism authorizing a procedure for the confiscation of firearms or other deadly weapons in the hands of persons taken into custody for evaluation of their mental condition, always be available to law enforcement agencies.

" 'The case of Bryte v. City of La Mesa[, *supra,*] (207 Cal.App.3d 687 . . .) has cast doubt upon the validity of the current statutory authority regarding confiscation of these weapons. This doubt and the great danger which would result if law enforcement agencies are left with no statutory authority to confiscate these weapons, make it necessary that this bill take effect immediately.' " (Historical and Statutory Notes, 73D West's Ann. Welf. & Inst. Code (1998 ed.) foll. § 8102, pp. 430-431.)

*Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1125 [278 Cal.Rptr. 346, 805 P.2d 300].) A distinction within a legislative scheme is not arbitrary if any set of facts would support it. (*Mathews v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 719, 739 [100 Cal.Rptr. 301, 493 P.2d 1165].)

▪ Appellant argues at various points that his right to return of his firearms is a fundamental right under the Second Amendment to the United States Constitution and that the constitutionality of section 8102 is therefore subject to strict scrutiny review. Clearly this is not so.

It has long been established in this state that regulation of firearms is a proper police function. (*Galvan v. Superior Court* (1969) 70 Cal.2d 851, 866 [76 Cal.Rptr. 642, 452 P.2d 930]; *People v. Seale* (1969) 274 Cal.App.2d 107, 114 [78 Cal.Rptr. 811]; *People v. Evans* (1974) 40 Cal.App.3d 582, 586-587 [115 Cal.Rptr. 304], disapproved on other grounds in *People v. King* (1978) 22 Cal.3d 12, 25 [148 Cal.Rptr. 409, 582 P.2d 1000].) "[L]egislative restrictions on the use of firearms are neither based upon constitutionally suspect criteria, nor do they trench upon any constitutionally protected liberties." (*Lewis v. United States* (1980) 445 U.S. 55, 65-66, fn. 8 [100 S.Ct. 915, 921, 63 L.Ed.2d 198] ["the Second Amendment guarantees no right to keep and bear a firearm that does not have 'some reasonable relationship to the preservation or efficiency of a well regulated militia' "], citing among others, *United States v. Miller* (1939) 307 U.S. 174, 178 [59 S.Ct. 816, 818, 83 L.Ed. 1206].) The Ninth Circuit is among those federal circuits considering the issue that have held "that the Second Amendment is a right held by the states, and does not protect the possession of a weapon by a private citizen." (*Hickman v. Block* (9th Cir. 1996) 81 F.3d 98, 101; accord, *U.S. v. Hancock* (9th Cir. 2000) 231 F.3d 557, 565; *San Diego County Gun Rights v. Reno* (9th Cir. 1996) 98 F.3d 1121, 1124; *Gillespie v. City of Indianapolis* (7th Cir. 1999) 185 F.3d 693, 709; *Love v. Pepersack* (4th Cir. 1995) 47 F.3d 120, 124; *United States v. Warin* (6th Cir. 1976) 530 F.2d 103, 106-107; *Cases v. U.S.* (1st Cir. 1942) 131 F.2d 916, 920-923.)

The sole case relied upon by appellant, *U.S. v. Emerson* (N.D.Tex. 1999) 46 F.Supp.2d 598, has been expressly rejected by numerous other courts, including the Ninth Circuit (*U.S. v. Kafka* (9th Cir. 2000) 222 F.3d 1129) and another federal district court in Texas (*U.S. v. Spruill* (W.D. Tex. 1999) 61 F.Supp.2d 587, 590). (See also *U.S. v. Napier* (6th Cir. 2000) 233 F.3d 394, 402-404; *U.S. v. Beavers* (6th Cir. 2000) 206 F.3d 706; *Olympic Arms v. Magaw* (E.D.Mich. 2000) 91 F.Supp.2d 1061; *U.S. v. Henson* (S.D.W.Va. 1999) 55 F.Supp.2d 528.)

The exercise of the police power to regulate firearms is clearly related to the public health, safety and welfare. (*Lewis v. United States, supra,* 445 U.S.

55, 65 [100 S.Ct. 915, 920-921]; *People v. Seale, supra,* 274 Cal.App.2d 107, 114.) Respondent identifies the object of the statute as providing a means whereby authorities can confiscate firearms in an emergency situation and may keep firearms from mentally unstable persons. The legislative history of the statute expressly recognizes the urgency and importance of such an objective and even the *Bryte* court did not question the legitimacy of the ends sought to be accomplished by section 8102.

Appellant does not attack the purpose of the statute, but rather argues there is no relationship between the legislative intent (ends sought to be achieved) and the application of section 8102.

He argues first that the statute is not rationally based as it does not require a relationship between the weapons possessed and the incident precipitating the section 5150 detention. Such a relationship is unnecessary. The Legislature could reasonably believe that whatever the precipitating incident, persons being detained for section 5150 observation under circumstances where it appeared they were mentally unstable and presented a danger to themselves or to others should be denied access to firearms they owned or possessed and that in such emergency circumstances, the police should be allowed to confiscate such firearms.

Appellant also argues the statute places an unnecessary and unreasonable restriction on the use of private property, citing *McKay Jewelers v. Bowron* (1942) 19 Cal.2d 595, 600 [122 P.2d 543, 139 A.L.R. 1188] (*McKay*). In *McKay,* the court held invalid a city ordinance prohibiting the solicitation of sales of goods by merchants from any doorway opening onto a public sidewalk as applied to merchants who solicit business in a quiet, dignified and peaceful manner, without pressure or undue influence, and who make no sales except inside their stores. (*Id.* at pp. 604-605.) The court recognized that: "A business may be inherently lawful and still subject to police regulation, but when such lawful business is regulated, it is a judicial question whether the law or ordinance is a lawful exercise of the police power. [Citations.] If, in the opinion of the court, a statute or ordinance purporting to be enacted to protect the public health, safety, morals, comfort, convenience or general welfare has no real or substantial relation to any of those objects, it is the duty of the court to so declare. A legislative body may not, under the guise of the police power, impose restrictions that are unnecessary and unreasonable upon the use of private property or the pursuit of useful activities. [Citations.]" (*Id.* at pp. 600-601.)

We agree, of course, with the general proposition advanced by *McKay, supra,* 19 Cal.2d 595, that exercise of the police power is subject to due

process limits. (See *Hale v. Morgan* (1978) 22 Cal.3d 388, 398 [149 Cal.Rptr. 375, 584 P.2d 512]; 8 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 791, pp. 318-319.) However, we find both the purpose of the statute at issue and its application here vastly different from the solicitation ordinance considered by *McKay.* Section 8102 directly safeguards public health and safety by allowing law enforcement officers to confiscate any firearm in the possession or control of a person who is appropriately detained or apprehended for a mental examination. Keeping a firearm away from a mentally unstable person is a reasonable exercise of the police power. It is not unreasonable to conclude there is a significant risk that a mentally unstable gun owner will harm himself or others with the weapon. (Cf., *State Bd. of Dry Cleaners v. Thrift-D-Lux Cleaners* (1953) 40 Cal.2d 436, 440 [254 P.2d 29] [finding a regulatory ordinance invalid because there was no real or substantial relationship between the setting of a minimum price threshold for dry cleaning businesses and the ordinance's purported objective of protecting public health and safety].) Moreover, as respondent argues, the statute as amended contains limits on the police power to confiscate and retain the firearms. The statute is not arbitrarily directed against anyone who owns or possesses a gun. Rather, only those who are justifiably apprehended or detained to have their mental condition evaluated are subject to its reach. As a practical matter, a weapon is subject to confiscation under this section only when there is an underlying emergency. Moreover, the statute requires prompt return of the weapon following release of the detainee, unless authorities timely seek to retain it by demonstrating that return of the firearm will likely endanger the gun owner or others. This statute is a reasonable limitation on the property right at issue and constitutes a reasonable exercise of the police power.

## C. *Vagueness and overbreadth challenge.*

█ Appellant also contends section 8102 is vague and overbroad in several respects. █ In reviewing a challenge to the constitutionality of a statute on its face, we consider the following: "A statute is invalid on its face and wholly void only when incapable of any valid application. [Citation.] In determining a statute's constitutionality, we start from the premise that it is valid, we resolve all doubts in favor of its constitutionality, and we uphold it unless it is in clear and unquestionable conflict with the state or federal Constitutions. (*County of Sonoma* v. *State Energy Resources Conservation etc. Com.* (1985) 40 Cal.3d 361 [220 Cal.Rptr. 114, 708 P.2d 693].) A challenge to a statute's constitutionality must demonstrate that its provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions. [Citation.] The corollary to the challenger's burden is that if the court can conceive of a situation in which the statute can be

applied without entailing an inevitable collision with constitutional provisions, the statute will prevail. [Citation.] A statute is not facially unconstitutional simply because it may not be constitutionally applied to some persons or circumstances; at a minimum its unlawful application must be substantial and real when judged in relation to the statute's plainly legitimate sweep. Unless it is in total conflict with the Constitution, any overbreadth is cured by a case-by-case analysis of the particular fact situation. [Citation.] A statute will be declared invalid in its entirety only when its scope cannot be limited to constitutionally applicable situations except by reading in numerous qualifications and exceptions, i.e., rewriting it, or if it is invalid in certain situations and cannot be enforced in others without danger of an uncertain or vague future application. [Citation.]" (*Mounts v. Uyeda* (1991) 227 Cal.App.3d 111, 121-122 [277 Cal.Rptr. 730].)

■ Appellant contends the statute is facially flawed because it does not mandate release of the weapon when a person is released from custody under section 5150. Arguing that the statute can be applied long after the weapons are confiscated and presumably after the danger has passed, appellant appears to be arguing that the statute is unconstitutional as it does not require the court to measure the risk of danger as of the date he was released from the section 5150 detention. It is true the statute does not narrowly limit the time frame of the court's inquiry to the date of the detainee's release or to the date of the hearing. Nor is it unconstitutionally vague or overbroad in failing to do so. The purpose of section 8102, like other statutes that limit the availability of handguns to persons with a history of mental disturbance, is to protect those persons or others in the event their judgment or mental balance remains or again becomes impaired. (See *Braman v. State of California* (1994) 28 Cal.App.4th 344, 354-355 [33 Cal.Rptr.2d 608] [in addition to protection of other persons, § 8103 is designed to protect one committed under Lanterman-Petris-Short Act (§ 5000 et seq.) from suicide by precluding his or her possession of a gun].) The court may properly consider whether the circumstances leading to the section 5150 detention might occur again and whether possession or control of those confiscated weapons in such circumstance would pose a risk of danger to appellant or to others.

Nor does the fact that a judge, rather than a medical professional, makes the ultimate assessment of danger render the statute unconstitutional. Both the gun owner and the authorities have the opportunity to present evidence of the gun owner's mental condition, including introduction of testimony by medical professionals. The judge's task is to consider the evidence presented, weigh the credibility of witnesses, and render a decision.

■ Appellant further argues that section 8102 is overinclusive because its reach is not limited to weapons in the immediate physical proximity or

control of the person detained, but extends to those "owned" by the section 5150 detainee. We can posit a safety rationale for this legislative choice. The Legislature has expressly cited the "great danger which would result if law enforcement agencies" lacked authority to confiscate weapons from such individuals. (Stats. 1989, ch. 921, § 3, p. 3206; see fn. 2, *ante*.) Moreover, as applied to appellant, the statute clearly passes muster in this regard as the only guns confiscated were located nearby in his bedroom and therefore within his control at the time he fell in the shower.

In a related argument, appellant points out the statute does not prohibit him from acquiring new guns at will, but only speaks to confiscation of those he currently owns, controls, or has in his possession. This appears to be a claim that the statute is *underinclusive*. It is well established that a statute need not eliminate all evils at once to survive a challenge on this ground. "Similarly, we are unpersuaded by appellant's argument that [the statute] is subject to attack if it is 'under-inclusive'—that is, if it does not get at all facets of the problem it is designed to ameliorate. As a general matter, governments are entitled to attack problems piecemeal, save where their policies implicate rights so fundamental that strict scrutiny must be applied. [Citation.]" (*Zauderer v. Office of Disciplinary Counsel* (1985) 471 U.S. 626, 651, fn. 14 [105 S.Ct. 2265, 2282, 85 L.Ed.2d 652]; see, e.g., *Zablocki v. Redhail* (1978) 434 U.S. 374, 390 [98 S.Ct. 673, 683, 54 L.Ed.2d 618].) The Legislature was not required to solve all issues relating to possession and acquisition of weapons by persons detained for observation under section 5150 in one fell swoop.

■ Appellant contends section 8102 is unconstitutionally vague, arguing that the standard allowing authorities to retain confiscated weapons is insufficiently objective. ■ A statute will be deemed void for vagueness where persons of common intelligence must guess as to its meaning and differ as to its applications. (*Franklin v. Leland Stanford Junior University* (1985) 172 Cal.App.3d 322, 347 [218 Cal.Rptr. 228].) In assessing a vagueness claim, greater tolerance is permitted with legislation imposing only civil rather than criminal penalties. (See *Chalmers v. City of Los Angeles* (9th Cir. 1985) 762 F.2d 753, 757.)

■ Appellant compares section 8102 with sections 8100 and 8103, arguing that the latter two statutes provide more rigorous and precise standards for firearm confiscation and return. Section 8100, subdivision (a) applies to a person who "has been admitted to a facility and is receiving inpatient treatment and, in the opinion of the attending health professional who is primarily responsible for the patient's treatment of a mental disorder, is a danger to self or others. . . ." (§ 8100, subd. (a).) When the person is

discharged, the subdivision no longer applies and the weapons are returned upon release. (*Ibid.*) Section 8100 subdivision (b) applies to a person who has communicated to a licensed psychotherapist a "serious threat of physical violence against a reasonably identifiable victim or victims." (§ 8100, subd. (b)(1).) That subdivision applies for a period of six months. Section 8103 requires the person detained and assessed under section 5150 be "admitted to a designated facility . . . because that person is a danger to himself, herself or others . . ." in order to support forfeiture of the confiscated firearms.

These statutes are not directly comparable. Section 8100 subdivisions (a) and (b) effect a more severe deprivation for the periods involved, preventing the person from having in his or her possession or under his or her custody or control, and from purchasing or receiving or attempting to purchase or receive, a firearm or deadly weapon. Section 8100, subdivision (b) also places the burden on the person seeking return of the weapon within the six-month period to "petition a court . . . for an order permitting him or her to own possess, control, receive, or purchase a firearm." Moreover, to allow return within that six-month period the court must find "by a preponderance of the evidence that the person would be likely to use the firearms . . . in a safe and lawful manner." (§ 8100, subd. (b)(2)(B).) Section 8103 also effects a more lengthy and severe deprivation in that the person coming within its provisions cannot own, possess, control, receive or purchase firearms or attempt to do so for a period of five years. That person also may request a hearing on the issue of return of the weapon, and the burden is on the district attorney to show that the gun owner is not likely to use the weapon in a safe manner. The statute specifically allows the use of hearsay evidence at the hearing. (§ 8103, subd. (f)(5).)

In any event, the question is not whether the scheme set forth in some other statute might be more precise, but whether that set forth in section 8102 is unconstitutionally vague. We conclude it is not.

Appellant attacks the statute as being overinclusive and vague in that it requires the court to determine if he would present a danger to himself or others. We do not believe that standard is unconstitutionally vague. It is a standard found in sections 8100, subdivision (a), 8103, and 5150. Nor do we believe persons of common intelligence must guess as to its meaning or would be likely to differ as to its applications.

Nevertheless, appellant argues that such language is overinclusive, citing as an example, that many people engaged in "extreme" sports may present a "danger" to themselves or others, but are not deprived of their weapons. Obviously, that is neither the issue nor the test set forth in the statute. The

standard is not whether persons engaging in high-risk behaviors present a danger to themselves or others generally, but "whether the return of a firearm [to a person detained under section 5150] would be likely to result in endangering the person or others, . . ." (§ 8102.) The statute is clear that the determination is to be based upon a danger resulting from return of a firearm.

■ Appellant argues that the court misconstrued the nature of the weapons seized, believing them to be automatic weapons, and that the court's concern with keeping the firearms away from appellant if he had "the least bit" of "mental imbalance" demonstrates the unconstitutionality of the statute.[3] Such challenges do not attack the facial validity of the statute, but are challenges to section 8102 as applied to appellant.

First, the court did not misconstrue the nature of the weapons confiscated. The record was clear as to the nature of these firearms, including the two semiautomatic rifles and two semiautomatic pistols and their loaded magazines. Moreover, the court itself clarified any possible misconception when it acknowledged, following its oral statement in response to a comment from counsel, "Semiautomatic. I understood they were semiautomatic weapons." The statement of decision describes these weapons precisely.

The court's stated concern about returning a weapon to anyone with the "least bit" of "mental imbalance," does not show the statute was vague as applied. The statement of decision, which is the pertinent document for purposes of this review, clearly sets forth the factors the court considered in assessing the risk imposed by return of the weapons to appellant. The statement of decision and order thereupon contains the finding that "[u]nder Welfare and Institutions Code section 8102, the Court determines that the return of the firearms to the respondent would be likely to result in endangering the respondent or other persons. It is inappropriate for assault weapons to be in the hands of a mentally unstable person."

We conclude section 8102 is neither void for vagueness on its face nor as applied here. We turn to the question whether substantial evidence supports

---

[3]Following the hearing, the court made certain findings orally from the bench. After finding that appellant was a threat to himself based upon the events of May 10, 1998, the court further determined he "is a threat to others. The mental state that leads to the kind of events that took place on May 10 is the type of a mental state that could result, and in this regard the Court takes note of several national incidents that occurred recently with automatic weapons that people have chosen to commit suicide by taking the lives of others. [¶] The Court will be candid that the Court finds that the nature of these particular assault weapons are inappropriate in the hands of anybody with the least bit of mental imbalance as indicated by the incident on [May] 10."

the court's determination that return of the firearms to appellant would be likely to result in endangering appellant or other persons.

## II. *Substantial Evidence*

 Appellant contends that the court's finding that return of the weapon to appellant would likely endanger appellant or others was not supported by substantial evidence. He further contends that the determination was based entirely upon inadmissible hearsay evidence and that absent such evidence, the determination could not stand. We disagree.

At the rehearing, the court admitted a copy of the sheriff's report prepared by Deputy Fuller. Fuller also testified at the hearing. The court allowed the admission of hearsay evidence, asserting that the proceeding was "administrative" and that a more relaxed standard for the introduction of hearsay evidence was therefore proper.

The parties dispute whether the proceeding was administrative. Although the question is close, we agree with appellant that the proceeding was judicial rather than administrative. The petition originally filed by respondent sheriff pursuant to section 8102 was filed in the superior court and was entitled "Petition Seeking Judicial Determination Re Return of Firearm or Deadly Weapon." The notice to appellant stated that the sheriff was filing "a petition for a hearing in the Superior Court of Contra Costa County in a department to be assigned by the presiding judge." Appellant filed formal pleadings, including a demurrer, exhibits thereto, and points and authorities in the superior court. Appellant was initially required to pay a filing fee in the superior court, although that fee was refunded under the authority of *Bryte*, following the initial hearing and decision. Both the initial hearing and the rehearing on the matter were heard in the superior court by a superior court judge. Nothing explicit was said about the hearing being "administrative" in nature until the court overruled appellant's objection to hearsay evidence regarding what appellant's sister told deputy Fuller by stating "The objection's overruled. It's an administrative hearing."

Respondent forcefully argues that the proceeding was administrative in its nature and that more relaxed evidentiary rules used in such proceedings should be followed.[4] In administrative proceedings, the requisites of due process will vary according to the competing interests at issue, so long

---

[4]At our request, the parties have provided additional argument on the question whether the proceeding was "administrative" in nature.

Respondent points out that the *Bryte* court stated that the availability of a collateral judicial remedy to recover the confiscated firearms could not serve as a substitute for an *administra-*

as basic requirements of notice and hearing are satisfied. (See, e.g., *Carrera v. Bertaini* (1976) 63 Cal.App.3d 721, 728-729 [134 Cal.Rptr. 14]; 7 Witkin, Summary of Cal. Law, *supra*, Constitutional Law, §§ 524, 525, pp. 725-727.) ▮ We are not so confident that the corollary—that a proceeding becomes administrative because less formal procedures are used—follows. In this regard it is noteworthy that section 8103, subdivision (f), regarding forfeiture proceedings involving persons admitted for treatment under section 5150, expressly allows the admission of hearsay evidence, whereas section 8102 contains no such express provision.

Assuming, without deciding that the rehearing was not administrative, but was subject to the rules of evidence applicable in civil cases, we nevertheless conclude substantial evidence supported the court's decision here.[5]

*tive* hearing where the collateral judicial proceeding was required to be initiated by the owner, with attendant costs and procedural barriers, and where the burden of proof effectively was placed upon the owner. (*Bryte, supra*, 207 Cal.App.3d at pp. 690-691.) Under the revised statute, as discussed above, the confiscating authority must initiate the proceeding within a short time after the appellant is released, and the burden is upon the authority rather than the owner. This looks very much like an administrative proceeding conducted in and by the superior court. Respondent urges that although the proceeding occurred in the superior court, it was in reality an administrative proceeding, and as such was subject to less formality and fewer procedural requirements—including a loosening of hearsay rules. Respondent points to *Leslie's Pool Mart, Inc. v. Department of Food & Agriculture* (1990) 223 Cal.App.3d 1524 [273 Cal.Rptr. 373], involving a postseizure hearing in which the appellate court observed: "While the United States Constitution undoubtedly requires a prompt and meaningful hearing following an administrative seizure of property (see, e.g., *Barry v. Barchi* (1979) 443 U.S. 55, 66 [61 L.Ed.2d 369, 376, 99 S.Ct. 2642]), we have found no federal cases holding such a hearing must be provided by the seizing agency as opposed to a court." (*Leslie's Pool Mart, Inc. v. Department of Food & Agriculture, supra,* 223 Cal.App.3d 1524, 1535.)

Recognizing that this statement was dictum, respondent acknowledges that "the question of whether the Section 8102 hearing was an administrative proceeding per se appears unclear because the hearing was not conducted by an administrative body, but by the superior court." Nevertheless, respondent argues that "the purpose and timing of the hearing is analogous to the post-deprivation administrative hearings conducted by administrative agencies for public health and safety concerns. [Citations.] In Section 8102 cases, the state legislature has chosen the superior court as the forum for the administrative hearing. As such, the hearings should be conducted as administrative proceedings, and the strict application of the rules of evidence should be relaxed to allow for the admission of hearsay evidence."

[5]"The gist of the 'substantial evidence' rule is: [¶] 'When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination . . . .' [*Bowers v. Bernards* [(1984)] 150 [Cal.App.]3d [870,] 873-874 [197 Cal.Rptr. 925], (original emphasis omitted); see *Bickel v. City of Piedmont* (1997) 16 [Cal.]4th 1040 [68 Cal.Rptr.2d 758, 946 P.2d 427].]

"So long as there is 'substantial evidence,' the appellate court *must affirm* . . . even if the reviewing justices personally would have ruled differently had they presided over the proceedings below, and even if other substantial evidence would have supported a different result. Stated another way, when there is substantial evidence in support of the trial court's

First, contrary to appellant's assertion, the determination not to return the weapons to him was not based upon inadmissible hearsay evidence. Deputy Fuller testified as to his observations and as to appellant's admissions to him. Moreover, no objection was made to introduction of the sheriff's report itself. Rather, the court asked whether the parties would stipulate that Fuller wrote the sheriff's report and appellant's counsel responded: "That's fine, yes. I just have a couple questions anyway I'm trying to get to." Although appellant points out that his counsel did not stipulate that the entire sheriff's report could come in, neither did counsel at any point object to the admission of Fuller's sheriff's report or its contents on hearsay grounds, other than to object to Fuller's testimony as to statements made to him by appellant's mother and sister.[6]

"In judicial proceedings, the rule is well established that incompetent hearsay admitted *without objection* is sufficient to sustain a finding or

---

decision, the reviewing court has *no power to substitute its deductions.* [Citations.]" (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 1999) ¶ 8.39, p. 8-16, original italics.)

[6]We note that a police officer's report is admissible under Evidence Code section 1280 if it is based upon the observations of a public employee who had a duty to observe facts and report and record them correctly. (E.g., *Snelgrove v. Department of Motor Vehicles* (1987) 194 Cal.App.3d 1364 [240 Cal.Rptr. 281].) Statements independently admissible, such as a party admission, contained in a police report are similarly admissible, despite their hearsay character. (*Lake v. Reed* (1997) 16 Cal.4th 448, 461 [65 Cal.Rptr.2d 860, 940 P.2d 311].)

There exists, however, a split of authority regarding whether hearsay statements contained in an official record are admissible where the public employee making the report (Fuller) is not the source of the information, but the information is based upon the observations made by another public employee (for instance, the EMT). Many courts, including this one, have held such evidence inadmissible. (See *Burge v. Department of Motor Vehicles* (1992) 5 Cal.App.4th 384, 388-389 [7 Cal.Rptr.2d 5]; *Imachi v. Department of Motor Vehicles* (1992) 2 Cal.App.4th 809, 815-817 [3 Cal.Rptr.2d 478] [police officer's sworn statement specifying results of defendant's blood-alcohol test inadmissible because not based on officer's personal knowledge]; see *Santos v. Department of Motor Vehicles* (1992) 5 Cal.App.4th 537 [7 Cal.Rptr.2d 10].)

However, more recently, other courts have held that personal knowledge is not necessary so long as the source of the information is trustworthy. (See *Gananian v. Zolin* (1995) 33 Cal.App.4th 634, 640 [39 Cal.Rptr.2d 384]; *McNary v. Department of Motor Vehicles* (1996) 45 Cal.App.4th 688, 695 [53 Cal.Rptr.2d 55] [police officer's report incorporating second officer's observations admissible under Evid. Code, § 1280].) At least one treatise has commented that "[t]his latter view seems correct because it follows the reasoning expressed in prior Supreme Court cases. [See *Loper v. Morrison* (1944) 23 C2d 600, 609 [145 P.2d 1]; *Taylor v. Centennial Bowl, Inc.* (1966) 65 C2d 114, 126 [52 Cal.Rptr. 561, 416 P.2d 793] —official records hearsay exception applies if contents of report are based on testifying officer's own observations or '*the observations of other police officers or public officials*' (decided under prior law)].)" (Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 1999) ¶ 8:1702.4, p. 8D-147, original italics.)

Because no adequate objection was interposed, we need not determine whether the information provided by the EMT to Fuller and included in the sheriff's report and Fuller's testimony would have been admissible in any event under the official records hearsay exception. (Evid. Code, § 1280.)

judgment." (1 Witkin, Cal. Evidence (3d ed. 1986) § 61, p. 55, original italics; see 3 Witkin, *supra*, Introduction of Evidence at Trial, § 2033, p. 1995.)

The only hearsay objections made by appellant were to Deputy Fuller's testimony that appellant's mother and sister told Fuller appellant was under stress and that the pill bottles were his. These statements were for the most part cumulative to other information observed by Fuller, admitted by appellant, or contained in the sheriff's report, and to which no objection was lodged. Appellant did object to statements made in the declaration by Sheriff's Deputy Maureen Bailey, which had been admitted in the prior court proceeding and which consisted almost entirely of hearsay statements made by Fuller to Bailey. Appellant's counsel refused to stipulate that the testimony of Fuller would be as to the facts set forth in the Bailey declaration that related to him. The court granted the rehearing to allow Fuller to be examined by appellant. Fuller testified about his observations, conclusions, and conversations with other persons at the rehearing. It appears the court did not rely at all upon the Bailey declaration in reaching its decision.

The court's ruling that the proceeding was administrative, such that the statements by appellant's mother and sister were admissible, came *after* Fuller testified that he had spoken with the EMT who was first on the scene, the medical staff present, appellant and his mother. Fuller testified that he detained appellant for a section 5150 observation based upon his determination that appellant was a danger to himself or to others. That determination was based on "the totality of the situation and the information presented to me." That information included appellant's admitting to him that he was depressed about work and school, his statement that he had taken four tablets of Soma (carisoprodol), which Fuller knew to be a prescription drug used as a painkiller. Appellant admitted he had no prescription for the painkiller. Medical staff at the scene told Fuller that appellant must have taken more than four of these pills. This evidence was admitted without objection and before the court's statement that the hearing was "administrative." By failing to object, appellant has waived any objection to the statements of the medical staff that he must have taken more than four pills.

Clearly any firsthand observations by Fuller, either were not hearsay or, if contained in the sheriff's report prepared by him, were admissible under the official records exception. (Evid. Code, § 1280.) Fuller's observations, contained in the sheriff's report, that appellant admitted he had taken the pills, that he had done so deliberately and that he was "depressed about work and school" were admissible under the official records exception. So, too, was Fuller's observation that appellant then became "unresponsive." Appellant's admissions to Fuller that he had been depressed, and his admission that he

had taken four pills and that he had no prescription for them were admissible in any event under the party admission exception to the hearsay rule. (Evid. Code, § 1220.) The capacity of the pill bottles obtained by Fuller from the EMT and from appellant's sister was an observation made by Fuller and was not inadmissible as hearsay. So, too, Fuller's opinion that appellant was a danger to himself and others and should be detained for observation was properly based on the totality of information Fuller had at the time and was properly admitted even if based in part upon hearsay, as it is apparent the information upon which he relied was that type routinely relied upon by officers in making decisions of this sort. (Evid. Code, § 801.) Moreover, under examination by appellant's attorney, Fuller stated his opinion, based upon his experience as an officer for more than 21 years, that depression is sometimes a precursor to suicide attempts. There was no objection to this testimony. Indeed, it was elicited by appellant's counsel. The court could properly consider it in determining whether return of the weapons to appellant likely would present a danger to appellant or others.

Appellant testified he was not depressed or suicidal, that he had not attempted suicide on the day he fell in the shower and that he had never been clinically depressed. He also testified that the weapons confiscated were not "loaded" in that there were no bullets in the chamber, and he denied the firearms were high-powered weapons. He admitted the drugs he took had not been medically prescribed, but stated he was taking three different types of medication for a recurring painful abscess and nothing seemed to help. He also stated he had not seen any mental health professionals since his release, as he did not think he needed their help. The court could easily have determined appellant was not credible, as his testimony was countered in numerous respects by Fuller's testimony that the weapons were semiautomatic, that loaded magazines were attached to the weapons,[7] that medical staff had advised Fuller that appellant must have taken more than four unprescribed painkillers, and by his observation of appellant at the hospital and appellant's admissions to him that he had been depressed about work and school.

From the foregoing, the trial court could reasonably infer that appellant had attempted suicide by taking an overdose of Soma, a prescription drug he unlawfully possessed; that he did so because he was depressed; that appellant refused to recognize he had a problem or even to admit that he had ever been depressed or suicidal; that appellant had refused to seek counseling or help for his depression; that given the circumstances, such depression was

[7]Common statutory definitions of "loaded" firearms include loaded and attached magazines or clips. (See *People v. Delong* (1970) 11 Cal.App.3d 786, 789 [90 Cal.Rptr. 193]; *People v. Clark* (1996) 45 Cal.App.4th 1147, 1152 [53 Cal.Rptr.2d 99]; Pen. Code, § 12031.)

likely to reoccur; and that the return of semiautomatic weapons to someone in these circumstances was likely to pose a danger to that person and to others.

Substantial evidence supported the court's findings in this regard.

The judgment is affirmed.

Haerle, J., and Ruvolo, J., concurred.