[No. D041918. Fourth Dist., Div. One. May 19, 2004.]

CITY OF SAN DIEGO, Plaintiff and Respondent, v.
KEVIN B., Defendant and Appellant.

COUNSEL

Kevin B., in pro. per., for Defendant and Appellant.

Trutanich-Michel, C. D. Michel and Kelly C. Quinn for California Rifle & Pistol Association as Amicus Curiae on behalf of Defendant and Appellant.

Casey Guinn, City Attorney, Anita M. Noone, Assistant City Attorney, and Simon Silva, Deputy City Attorney, for Plaintiff and Respondent.

OPINION

BENKE, Acting P. J.— ■ Welfare and Institutions Code section 5150[1] permits peace officers and specified mental health professionals to take a person into custody if the peace officer or mental health professional has probable cause to believe the person is a danger to himself or others. Custody under section 5150 must be in a designated mental health facility and may not exceed 72 hours. The person who is in custody must be assessed by the facility prior to admission and, if admitted, evaluated under the direction of a mental health professional. (§§ 5151, 5152.)

■ A peace officer who takes a person into custody under section 5150 is required to confiscate any firearms in that person's possession. (§ 8102, subd. (a).) Following the person's release from custody, the agency that has seized the firearms may apply to the superior court for an order forfeiting the firearms. Forfeiture may be ordered upon a showing that return of the firearms would endanger the person or others. (§ 8102, subd. (c).)

Here, the record is clear defendant and appellant Kevin B. was subject to detention under section 5150 at the time of a domestic disturbance at his home. While police officers employed by plaintiff and respondent City of San Diego (city) were still actively searching for Kevin, they seized weapons from his home and from a car he owned. However, notwithstanding the power they had to take Kevin into custody, the police officers were never able to locate him and he was never detained or evaluated.

Following the events which led to the seizure of his weapons, city's police department refused to return them and instead filed a petition requesting permission to destroy them. Based upon testimony from one of the police officers who investigated the domestic disturbance, the trial court found that returning the weapons would create a danger to Kevin and others and ordered them destroyed.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

We reverse. The power to seek forfeiture of firearms or other deadly weapons is predicated on the performance of the assessment and evaluation required by sections 5151 and 5152. Here, because Kevin was never taken into custody, no assessment or evaluation of him was ever performed. Under these circumstances the statute did not permit the trial court to order that Kevin's firearms be forfeited.

## FACTUAL SUMMARY

On December 29, 2002, San Diego police officers responded to a 911 call placed from Kevin's home. When the police arrived at the home, they found Kevin's mother in the interior of the home and visibly distraught. She explained that Kevin left the home in a rage after her husband called the police.

Shortly thereafter Kevin's father returned to the house and he too was visibly upset. He explained that Kevin had a violent temper and that earlier in the evening Kevin threw a plate of food across the living room. When his mother arrived at the house and attempted to speak to Kevin in her native language, Farsi, Kevin told her not to speak to him in Farsi. Kevin then picked up a knife and punctured one of the tires on his mother's car. Kevin's father explained he had recently replaced another tire that Kevin punctured.

Kevin's father called police after Kevin punctured the tire. Kevin's father then decided to leave the house and started walking towards his own car, which was parked some distance from the house because he did not want Kevin to damage it. According to Kevin's father, as he was walking to the car Kevin drove past him and told him "You called the police." Kevin drove around the corner and Kevin's father heard four gunshots.

Kevin's father showed the police areas of the house, which had been damaged by Kevin. Kevin's father also led police to two guns Kevin owned. One was in a downstairs bedroom and the other was in a car Kevin owned. The police seized the weapons.

Finally, Kevin's father told the police that Kevin was particularly enraged at an automobile restorer who had been hired by Kevin to work on an exotic car Kevin owned. The restorer drove the car and was involved in an accident in which the car was destroyed.

The police were never able to locate Kevin that evening and later they received a telephone call from his father in which Kevin's father asked that the investigation of his son be terminated. Kevin was never taken into custody by the police.

On February 3, 2003, the city filed a petition under section 8102, subdivision (c), in which it alleged that returning the seized weapons to Kevin would endanger Kevin or others. The city asked for an order permitting it to destroy the weapons. The trial court conducted a hearing at which one of the officers who seized the weapons testified. The officer related what Kevin's parents told him and the damage he observed. Kevin also testified and he refuted the version of events his parents had provided the police. Kevin's parents did not testify. The trial court granted the petition and ordered that weapons and ammunition be destroyed. Kevin filed a timely notice of appeal.

## DISCUSSION

### I

#### A. *Statutory Framework*

##### 1. *Detention of Persons Dangerous to Themselves or Others*

Section 5150 provides in part: "When any person, as a result of mental disorder, is a danger to others, or to himself or herself . . . a peace officer . . . may, upon probable cause, take or cause to be taken, the person into custody and place him or her in a facility designated by the county and approved the State Department of Mental Health as a facility for 72-hour treatment and evaluation."

Section 5151 requires: "Prior to admitting a person to the facility for 72-hour treatment and evaluation pursuant to Section 5150, the professional person in charge of the facility or his or her designee shall assess the individual in person to determine the appropriateness of the involuntary detention."

In addition to the admission assessment required by section 5151, section 5152, subdivision (a), requires: "Each person admitted to a facility for 72-hour treatment and evaluation under the provisions of this article shall receive an evaluation as soon after he or she is admitted as possible and shall receive whatever treatment and care his or her condition requires for the full period that he or she is held."

### 2. *Confiscation and Forfeiture of Weapons*

■ The confiscation and destruction of firearms owned by persons who have been detained under section 5150 is authorized and governed by section 8102. Section 8102, subdivision (a), states: "Whenever a person, who has been detained or apprehended for examination of his or her mental condition . . . , is found to own, have in his or her possession or under his or her control, any firearm whatsoever, or any other deadly weapon, the firearm or other deadly weapon shall be confiscated by any law enforcement agency or peace officer, who shall retain custody of the firearm or other deadly weapon." Section 8102 also permits confiscation of weapons of persons who have voluntarily admitted themselves to a mental health facility and been found dangerous to themselves or others, persons who communicated a serious threat of physical violence against an identifiable victim and persons who have been adjudicated as danger to themselves or others.

Section 8102, subdivision (b), states:

"Upon confiscation of any firearm or other deadly weapon from a person who has been detained or apprehended for examination of his or her mental condition, the peace officer or law enforcement agency shall notify the person of the procedure for the return of any firearm or other deadly weapon which has been confiscated.

"Where the person is released, the professional person in charge of the facility, or his or her designee, shall notify the person of the procedure for return of any firearm or other deadly weapon which may have been confiscated.

"Health facility personnel shall notify the confiscating law enforcement agency upon release of the detained person, and shall make a notation to the effect that the facility provided the required notice to the person regarding the procedure to obtain return of any confiscated firearm."

Section 8102, subdivision (c), in turn states: "Upon the release of a person as described in subdivision (b), the confiscating law enforcement agency shall have 30 days to initiate a petition in the superior court for a hearing to determine whether the return of a firearm or other deadly weapon would be likely to result in endangering the person or others, and to send a notice advising the person of his or her right to a hearing on this issue. The law enforcement agency may make an ex parte application stating good cause for an order extending the time to file a petition. Including any extension of time granted in response to an ex parte request, a petition must be filed within 60 days of the release of the person from a health facility."

 In addition to the confiscation and forfeiture of weapons provided by section 8102, any person who has been detained for evaluation under section 5150 may not own, possess, control, receive or purchase firearms for a period of five years after release from the mental health facility which performed the evaluation of his or her mental state. (§ 8103, subd. (f)(1).)[2]

B. *Analysis*

The foregoing establishes a system of correlative powers, duties and rights that arise when a law enforcement officer is confronted with a person who is a danger to himself or others as a result of mental illness. Where a law enforcement officer has probable cause to believe a person is a danger to himself or others, section 5150 permits a law enforcement officer to take the person in custody and place him in a designated mental health facility for evaluation. Under sections 5151 and 5152 the person must receive an initial assessment before being admitted to the facility, and, if admitted, the person must be evaluated as soon as possible. In no event may the person be held for evaluation for more than 72 hours.[3]

 When, under section 5150, a person has been detained, section 8102, subdivision (a), requires that law enforcement officers confiscate any firearms or weapons in that person's possession. Upon the person's release the mental health facility which has evaluated the person must notify the law enforcement agency which confiscated the weapons. The law enforcement agency may, within 30 days after the person's release, petition for an order determining whether return of the weapons would be likely to result in endangering the persons or others. In any event, the person may not own, possess or purchase any firearms for a period of five years.

---

[2] "No person who has been (A) taken into custody as provided in Section 5150 because that person is a danger to himself, herself, or to others, (B) assessed within the meaning of Section 5151, and (C) admitted to a designated facility within the meaning of Section 5151 and 5152 because that person is a danger to himself, herself, or others, shall own, possess, control, receive, or purchase, or attempt to own, possess, control, receive, or purchase any firearm for a period of five years after the person is released from the facility. A person described in the preceding sentence, however, may own, possess, control, receive, or purchase, or attempt to own, possess, control, receive, or purchase any firearm if the superior court has, pursuant to paragraph (5), found that the People of the State of California have not met their burden pursuant to paragraph (6)." (§ 8103, subd. (f)(1).)

[3] If following the evaluation the staff of the mental health facility believes the person is a danger to himself or others as a result of mental disorder, the facility may certify that the person requires 14 days of intensive treatment. (§ 5250.) The person may challenge the certification by way of a petition for habeas corpus which must be heard. (§ 5275.) In the absence of a petition for habeas corpus, the 14-day intensive treatment provided by section 5250 is subject to a certification review hearing. (§ 5256.)

█ As appellant points out, it is not possible to read these provisions as permitting the forfeiture of firearms or weapons where a person has not received an assessment and evaluation of his or her mental condition. The only authority permitting forfeiture is section 8102, subdivision (c). By its terms section 8102, subdivision (c), only applies to people who have been *released* as described in section 8102, subdivision (b). Section 8102, subdivision (b), only refers to people who have had weapons confiscated under section 8102, subdivision (a). By its terms section 8102, subdivision (a), permits confiscation of weapons only of persons who have been apprehended or detained under section 5150 or who have been evaluated in some fashion by a mental health professional. As we have noted, a person detained under section 5150 must be both assessed at the time of admission to a mental health facility and evaluated if admitted. The requirement of such professional assessment and evaluation is of course logical in light of the fact that law enforcement officers initiating the process are not required to definitively determine whether a person is dangerous, but only whether there is probable cause to believe a person is dangerous.

Our literal reading of this aspect of the statutory scheme is supported by both constitutional and practical considerations. "There is no question but that firearms and weapons are 'property' and accordingly, that the due process clauses of the federal and state Constitutions apply to their seizure." (*Bryte v. City of La Mesa* (1989) 207 Cal.App.3d 687, 689 [255 Cal.Rptr. 64].) In this regard we note, "[f]orfeitures are not favored in the law; strict compliance with the letter of the law by those seeking forfeiture must be required." (*Nasir v. Sacramento County Off. of the Dist. Atty.* (1992) 11 Cal.App.4th 976, 986 [15 Cal.Rptr.2d 694].)

More directly, as the court in *Rupf v. Yan* (2000) 85 Cal.App.4th 411, 423 [102 Cal.Rptr.2d 157], noted, the assessment and evaluation required by sections 5151 and 5152 are important limitations on the power to confiscate and withhold weapons. In finding that section 8102 meets the requirements of substantive due process, that court stated: "Section 8102 directly safeguards public health and safety by allowing law enforcement officers to confiscate any firearm in the possession or control of a person who is appropriately detained or apprehended for a mental examination. Keeping a firearm away from a mentally unstable person is a reasonable exercise of the police power. It is not unreasonable to conclude there is a significant risk that a mentally unstable gun owner will harm himself or others with the weapon. [Citation.] Moreover, as respondent argues, *the statute as amended contains limits on the police power to retain the firearms*. The statute is not arbitrarily directed against anyone who owns or possesses a gun. Rather, *only those who are justifiably apprehended or detained to have their mental condition evaluated are subject to its reach.*" (*Rupf, supra,* 85 Cal.App.4th at p. 423, italics added.)

Thus, if police do not believe a person is dangerous enough to warrant apprehension, assessment and evaluation, the statute does not permit them to permanently deprive the person of his property.

■ On a practical level, unless the power to confiscate and forfeit weapons is closely tethered to the assessment and evaluation required by section 5151 and 5152, a risk arises that weapons will be taken from law-abiding citizens who in fact are not a danger to themselves or others. Absent assessment and evaluation by trained mental health professionals, the seizure and loss of weapons would depend solely on the necessarily subjective conclusion of law enforcement officers who may or may not have the mental health training and experience otherwise available at a designated mental health facility within the meaning of section 5150. Of particular concern here is the fact that although we completely credit the police officers' report of the statements made by appellant's parents, the police themselves never spoke to or observed appellant. Thus not only did the confiscation and ultimate forfeiture of appellant's weapons occur without any assessment or evaluation of him by mental health professionals, it occurred solely on the basis of secondhand reports of his behavior. We need not determine whether the Constitution permits confiscation and forfeiture on such a record. Given the literal language of the applicable statutes and the risk of erroneous confiscation and forfeiture, it suffices to conclude that in permitting confiscation and forfeiture of weapons, the Legislature intended that no permanent deprivation occur in the absence of the assessment required by section 5151 and, upon admission to a mental health facility, the evaluation required by section 5150.

Our conclusion as to the necessity of an assessment and evaluation prior to the filing of section 8102, subdivision (c), petition is consistent with the holding in *Rupf v. Yan, supra*, 85 Cal.App.4th at pages 428–433. There the court found that the testimony of a law enforcement officer was by itself sufficient to support a forfeiture order under section 8102, subdivision (c). (*Rupf,* at pp. 428–433.) The officer in that case personally observed the detainee's behavior and spoke to medical professionals who were on the scene of the detainee's apparent attempted suicide. Importantly, the detainee in *Rupf v. Yan* was in fact taken into custody for a 72-hour evaluation. Following his release the detainee did not seek any further mental health treatment and did not offer any evidence from a mental health professional as to his mental state. On that record, where the professional assessment and evaluation required by the statutory scheme took place, where the officer relayed to the court his own observations and the conclusions of medical professionals, there was very little risk of an erroneous deprivation of property rights. Here in contrast, the process city would have us approve does not provide important safeguards mandated by the Legislature.

██ Because appellant was never assessed or evaluated, city had no power to bring a petition under section 8102, subdivision (c).[4] Accordingly, the trial court erred in granting city's petition. The order appealed from is reversed.

McIntyre, J., and Aaron, J., concurred.

---

[4] We do not reach appellant's contention that city's petition was untimely. He did not raise the issue in the trial court and in any event in light of our holding it is not necessary that we resolve it.