Filed 9/18/14  In re Nickolas T. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re NICKOLAS T., a Person Coming Under the Juvenile Court Law. | D065507 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ003553) |
| v. | |
| B.T., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge.  Affirmed.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Phillips, Chief Deputy County Counsel, and Dana C. Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

Dependency Legal Group of San Diego, Tilisha Martin, and Carolyn Levenberg for Minor.

B.T. appeals an order denying her request for custody of her son, Nickolas T., at a combined postpermanency review hearing under Welfare and Institutions Code section 366.3[1] and a disposition hearing on a supplemental petition under section 387. She contends Nickolas's dependency proceedings should be in the reunification phase, not in postpermanency review, and principles of due process required the court to return Nickolas to her care absent a finding that return would be detrimental to his health, safety, or physical or emotional well-being.

As we shall explain, B.T.'s rights to due process were not violated. The court properly proceeded under section 366.3, which governs postpermanency review, but did not apply the correct legal standard under section 366.3, subdivision (h). That standard, which applies to a child who has a permanency plan of long-term foster care, requires the court to consider and reject all other permanency options, including return to a parent, as not being in the child's best interest before it may continue the child's plan of long-term foster care. However, because the court made explicit findings which are supported by the record, that return would be detrimental to Nickolas, and that B.T. did not meet her burden to show changed circumstances and return to her care was in Nickolas's best interest, the record clearly supports a finding under the appropriate standard. (§ 366.3, subd. (h).) We conclude there is no prejudicial error, and thus affirm the order denying B.T.'s request for custody.

FACTUAL AND PROCEDURAL BACKGROUND

B.T. is the mother of Nickolas T., who was born in November 1997. The identity of Nickolas's father is unknown. When Nickolas was three years old, B.T. voluntarily placed

---

[1] Unless otherwise specified, all further statutory references are to the Welfare and Institutions Code.

2

Nickolas and several of his siblings in protective custody in Mississippi. She was subsequently incarcerated on charges of robbery, motor vehicle theft, and receiving stolen property. Nickolas and his siblings were eventually placed in the care of a maternal aunt and uncle, who subsequently moved to San Diego County. The history of Nickolas's early years is detailed in this court's opinion, *In re Nickolas T.* (2013) 217 Cal.App.4th 1492 (*Nickolas T.*), and we need not repeat those details here.

In May 2012, the San Diego County Health and Human Services Agency (Agency) detained Nickolas in protective custody and filed a petition alleging Nickolas's aunt and uncle had physically abused him. The court found that Nickolas was described by section 300, subdivision (b), dismissed the count alleging physical abuse, and terminated the aunt and uncle's guardianship. At counsel's urging, the court proceeded as if the case was in postpermanency planning and denied B.T.'s request for custody of Nickolas. B.T. did not request reunification services. The court selected long-term foster care as Nickolas's permanent plan, set a postpermanency plan review hearing, and placed him with a nonrelative extended family member (caregiver). (*Nickolas T.*, *supra*, 217 Cal.App.4th at pp. 1498-1501.)

B.T. appealed the order denying her request for custody. This court held that the selection of a permanent plan of long-term foster care for Nickolas at the disposition hearing did not comport with statutory requirements. However, because B.T. did not challenge the selection of a permanency plan on appeal and there was substantial evidence in the record to support a detriment finding under section 361.2, the correct statutory provision, we found no prejudicial error. Nickolas had not lived with B.T. since he was three years old, and he did not trust her to adequately care for him and protect him. B.T. believed that Nickolas lied about

3

having been physically abused despite medical and other corroborating evidence supporting his claim. B.T. expressly stated she was not seeking reunification services and retained the right to file a section 388 petition seeking Nickolas's return to her custody on a showing of changed circumstances and best interests of the child. Further, the court was required to consider all permanency planning options for a child in long-term foster care every six months, including ordering reunification services or returning the child to the parent's custody.[2] (*Nickolas T.*, *supra*, 217 Cal.App.4th at pp. 1507-1508.)

In May 2013, Nickolas was expelled from high school for smoking a hookah pipe. He transferred to another high school where he was suspended for smoking marijuana. Nickolas completed a substance abuse program and remained at school. He did not want to participate in recommended therapy. In July, Nickolas was charged with two counts of armed robbery after his companion pulled a knife on two other teenagers and they stole the teenagers' skateboards. Nickolas expressed remorse for the incident and was released to his caregiver. He said he felt angry at times for no apparent reason and asked to resume therapy.

Nickolas continued to visit his aunt and his siblings, but chose not to have any contact with his uncle. His mother visited him in January 2013. Nickolas felt comfortable with her. Nickolas said he spoke to his mother about once a month, usually on his initiative. He did not want to return to his mother's care.

In October, Nickolas was expelled from high school. He became affiliated with a gang. Another high school accepted Nickolas. Ten days later he was suspended from that high

---

2  At a postpermanency planning review hearing for a child in long-term foster care, the court is required to consider return of a child to his or her parent only if parental rights have not been terminated. (§ 366.3, subd. (b).)

school for truancy, possession of marijuana, and being under the influence of marijuana. The high school allowed him to remain in school on the condition that he attend weekly substance abuse meetings and submit to on-demand drug tests; however, Nickolas did not attend the required meetings. He also missed his therapy appointments. On November 8, when his caregiver was not at home, Nickolas and his friends had a party at the caregiver's home, in which they drank alcohol and left the empty bottles in the backyard and in the street.

On November 11, the caregiver found a suicide note that Nickolas had written. Nickolas was admitted to the hospital under section 5150, which permits peace officers and specified mental health professionals to take a person into custody if there is probable cause to believe the person is a danger to himself or others. (*City of San Diego v. Kevin B.* (2004) 118 Cal.App.4th 933, 936.) Nickolas claimed the note was a result of a "random thought" and was released from the hospital without treatment. His doctor said Nickolas was not motivated to change.

On December 11, the court assumed both dependency and delinquency jurisdiction over Nickolas, and designated the Agency as the lead agency in the case. Nickolas was placed on probation and 45 days of home supervision. On December 17, he violated probation by leaving school without permission and was placed in juvenile hall. The caregiver notified the Agency that he was no longer able to provide placement for Nickolas.

B.T. asked the Agency to return Nickolas to her care in Mississippi. She said he needed strict boundaries. Alternatively, B.T. asked the Agency to consider Nickolas's aunt and uncle for placement. The social worker reminded B.T. that Nickolas was removed from his aunt and

uncle's care on allegations of physical abuse. B.T. insisted the Agency consider the aunt and uncle for placement.

On January 8, 2014, a foster parent who had experience working with teenagers agreed to care for Nickolas. Nickolas was released from juvenile hall to her care. He returned to high school and resumed therapy.

On January 16, the court held a combined hearing on the Agency's petition to change Nickolas's placement from a nonrelative extended family member to foster care under section 387 and a postpermanency planning review under section 366.3. The court admitted the Agency's reports in evidence, as detailed above, and found that the previous disposition had not been effective in protecting Nickolas.

B.T. wanted Nickolas to live with her and her husband. She had four other children in her care: a 15-year old son, a 14-year old daughter, and four-year old twin sons. B.T. worked in the dietary department of a hospital. She lived in a three-bedroom, two-bath home in a good neighborhood, near a good high school. Counseling for Nickolas was available at the high school, and she could also look for family counseling.

B.T. testified that she talked to Nickolas by telephone two to three times a week. She last saw him a year earlier, when she came to San Diego to visit him and her other children. B.T. wanted Nickolas placed with her, saying, "Nickolas is my son, and I love him. And he's been in a lot of trouble lately, which I'm very [] disappointed about. I also don't want my son going down the wrong path. I want him to be where he's loved, with mom."

B.T. acknowledged she did not believe that Nickolas had been physically abused by his aunt and uncle. B.T. had not participated in any educational programs about child abuse. She

maintained that the injuries on Nickolas's hands were caused by playing sports. B.T. last visited Nickolas in January 2013. She was aware the court had ordered the Agency to provide funds to allow her to travel from Mississippi to San Diego to visit Nickolas.

The court found by clear and convincing evidence it would be detrimental to return Nickolas to B.T. B.T. appeared to lack insight and the ability to protect her son, as she did not believe that Nickolas was physically abused by his aunt and uncle. B.T. visited Nickolas once in the last year and had some telephone contact with him, but the parent/child bond was not sufficient or strong enough to allow Nickolas to be appropriately placed with his mother. The court also considered Nickolas's wishes to remain in San Diego in a foster care home. Nickolas was 16 years old and had been raised in San Diego. In view of his delinquent acts and his mental health status, Nickolas required a higher level of care than his mother could provide to him. The court denied B.T.'s request for placement, finding that B.T. did not show changed circumstances and that it was in Nickolas's best interest to place him in a foster home with appropriate support, structure and therapeutic resources.

## DISCUSSION

### A

### *The Parties' Contentions*

B.T. contends the court erred when it conducted a postpermanency review hearing under section 366.3 instead of a status review hearing under section 366.21, and denied her request for custody of her son. She argues the case is in reunification because she did not explicitly waive her right to reunification services under section 361.5, subdivision (b)(14) and thus, the court was required to return Nickolas to her care absent a showing that return would

7

create a substantial risk of detriment to Nickolas's safety, protection, or physical or emotional well-being. (§ 366.21, subds. (e), (f).) B.T. maintains the court disregarded the appropriate statutory scheme and thus violated her fundamental liberty interest in the care and custody of her son. She further contends, notwithstanding the court's failure to follow the proper statutory scheme, there is not substantial evidence to support the finding that return to her care would create a substantial risk of detriment to Nickolas's safety, protection or well-being.

The Agency asserts B.T. did not assert at trial (or in the prior appeal) that Nickolas's case was in the reunification phase and she has forfeited her right to claim this error on appeal. The Agency further argues the juvenile court properly conducted a postpermanency review hearing and did not err in denying B.T.'s request for custody because she did not meet her burden to prove changed circumstances and that return to her care was in Nickolas's best interests. Nickolas joins in the Agency's arguments.

B

*Forfeiture*

"A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 221 (*Dakota H.*).) Generally, a reviewing court will not consider a challenge to a ruling if an objection could have been, but was not, made in the trial court. The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so any error may be corrected. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.)

We acknowledge the Agency's argument concerning forfeiture. However, application of the forfeiture rule is not automatic. (*In re V.F.* (2007) 157 Cal.App.4th 962, 968.) There is

8

no dispute about the standards and procedures that were employed by the court. When the facts are not disputed, the effect or legal significance of those facts is a question of law. (*Ibid*.) We therefore exercise our discretion to review the issues to address the legal issue raised in this case. (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081.)

Because the question of the appropriate status of the case is one of law, we review the claimed error de novo. (*Dakota H.*, *supra*, 132 Cal.App.4th at p. 222.)

C

*The Unusual Posture of Nickolas's Dependency Proceedings*
*Does Not Violate B.T.'s Due Process Rights*

In *Nickolas T.*, we determined the court erred when it acquiesced to the parties' theory that because a permanency plan of guardianship had been selected for Nickolas in 2006 in Mississippi, his new California dependency case was also at the postpermanency stage. Notwithstanding the error, we concluded that the selection of long-term foster care as Nickolas's permanency plan did not require reversal because the record supported a finding that placement with B.T. would be detrimental to Nickolas; B.T. expressly stated she was not requesting reunification services; her parental rights were not terminated; and she retained the right to seek Nickolas's return to her care under section 388 or section 366.3. (*Nickolas T.*, *supra*, 217 Cal.App.4th at pp. 1507-1508.) Thus, under the law of the case, the court properly heard the case under section 366.3, which governs postpermanency planning reviews.

We are not persuaded by B.T.'s argument the unusual posture of Nickolas's case violates her fundamental interest in making decisions concerning his care, custody, and control under the federal due process clause. (*Santosky v. Kramer* (1982) 455 U.S. 745, 758; *In re Dakota H*., *supra*, 132 Cal.App.4th pp. 222-224.) B.T. relinquished custody of Nickolas

9

when he was three years old. Her fundamental interest in his care and custody was diminished both by that act and by her failure to seek to terminate the aunt and uncle's guardianship before Nickolas was adjudicated a dependent of the juvenile court. (*In re S.H.* (2011) 197 Cal.App.4th 1542, 1559 [where a permanent plan of guardianship has been ordered, the parent's interest in the care, custody and companionship of his or her child is no longer paramount]; see *In re Stephanie M*. (1994) 7 Cal.4th 295, 317 [when a case is no longer in reunification, the focus shifts from the parent's interests to the child's interests in permanency and stability].)

In addition, the existence of a Mississippi court order granting B.T. the right to regain custody of Nickolas on proof she had the ability to provide for him does not, contrary to her argument, assist her here. Instead, it shows that B.T.'s interest in Nickolas's care and custody was limited by the Mississippi court to the right to appear in court and prove that she was capable of meeting Nickolas's needs. This is precisely the opportunity that she had, and continues to have, in Nickolas's dependency case. Thus, we reject B.T.'s argument that her substantive liberty interests in Nickolas's care require the court to return Nickolas to her care absent a finding of detriment. Further, contrary to B.T.'s argument, the record clearly shows the juvenile court made a detriment finding; thus, B.T. received the process she asserts is due under federal constitutional principles.

D

*Additional Factual and Procedural Background and the Legal Standard for*
*Return to Parental Custody under Section 366.3*

At trial, the Agency argued that to regain custody of Nickolas, B.T. was required to prove, by clear and convincing evidence, changed circumstances and that it was in Nickolas's best interests to return to his mother's care.[3] B.T. asked the court to immediately return Nickolas to her custody, maintaining there was not a substantial risk of detriment to Nickolas in her care and considering his current circumstances and lack of stability, it was in his best interest to return to her care. Minor's trial counsel asked the court to find that return would be detrimental to Nickolas because B.T. still believed he had not been physically abused, and had not participated in services or made any efforts to reunify with him.

The court proceeded under sections 387 and 366.3, and granted the Agency's section 387 petition. It also determined there would be a substantial risk of detriment to Nickolas if returned to B.T.'s care, and that B.T. did not demonstrate changed circumstances and return to her care was not in Nickolas's best interest. However, as we shall explain, the court did not apply the required legal standard in determining whether to return Nickolas to B.T.'s care, but the error was not prejudicial.

Section 387 governs the placement of a dependent child in a higher level of care when the previous placement has not been effective in protecting or rehabilitating the child, or a relative placement is no longer appropriate in view of the criteria in section 361.3. If the court

---

[3]   B.T. did not file a section 388 petition seeking Nickolas's return to her care. Had she done so prior to the postpermanency review hearing, she would have had to prove, by a preponderance of evidence, changed circumstances or new evidence, and that it would be in Nickolas's best interest to grant the relief requested. (§ 388.)

11

makes a true finding on a section 387 petition and considers removing the child from the custody of his or her parent, the court is required to make a detriment finding under section 361 before it may remove the child from the parent's custody.[4] (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1162; *In re Paul E.* (1995) 39 Cal.App.4th 996, 1004-1005.) However, where, as here, a child has already been removed from the parent's custody on a detriment finding and has remained in out-of-home care, section 361 does not apply and the court is not required to make a detriment finding at the section 387 dispositional hearing. Under the circumstances presented here, involving both a disposition hearing under section 387 and a postpermanency review hearing under section 366.3, the court's authority to return a child in long-term foster care to the care of his or her parent is controlled by section 366.3, subdivision (h).

Section 366.3 governs postpermanency review hearings for children for whom a permanency plan has been selected, including long-term foster care. Consistent with the Legislature's preference for a permanency plan other than long-term foster care (§ 396),[5] the

---

[4]    Section 361, subdivision (c) provides, in relevant part: "A dependent child may not be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence . . . . There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody."

[5]    Section 396 states: "It is the policy of the Legislature that foster care should be a temporary method of care for the children of this state, that children have a right to a normal home life free from abuse, that reunification with the natural parent or parents or another alternate permanent living situation such as adoption or guardianship is more suitable to a child's well-being than is foster care, that this state has a responsibility to attempt to ensure that children are given the chance to have happy and healthy lives, and that, to the extent possible, the current practice of moving children receiving foster care services from one foster home to another until they reach the age of majority should be discontinued."

12

court is required to consider "all permanency planning options for the child" at a postpermanency review hearing.[6] (§ 366.3, subd. (h).) Those options include "whether the child should be returned to the home of the parent, placed for adoption, or, for an Indian child, in consultation with the child's tribe, placed for tribal customary adoption, or appointed a legal guardian, or, *if compelling reasons exist for finding that none of the foregoing options are in the best interest of the child*, whether the child should be placed in another planned permanent living arrangement." (§ 366.3, subd. (h), italics added.) Basically, to continue a child's placement in long-term foster care, the court must consider and reject all other available permanency options as not being in the best interest of the child.[7] Because the court failed to do so, the court erred, but the error was harmless.

The court determined that return would be detrimental to Nickolas for a variety of reasons, including: B.T.'s apparent lack of insight and ability to protect her son; her minimal contact with Nickolas; the lack of a strong parent/child bond; Nickolas's wish to remain in San Diego; and his need for a higher level of care than his mother could provide to him. The

---

[6] In addition, if parental rights have not been terminated (that is, the child's permanency placement is guardianship or long-term foster care), the court can order reunification services for up to six months, and family maintenance services for an additional six months, if the parent proves, by a preponderance of the evidence, that further efforts at reunification are the best alternative for the child. (§ 366.3, subd. (f).)

[7] Section 366.3, subdivision (h) does not specify the burden or standard of proof. Thus, the party opposing a particular permanency plan bears the burden to show, by a preponderance of the evidence, that a compelling reason exists for finding that the particular permanency plan is not in the child's best interest. (Evid. Code, § 500 [except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential for the claim or defense the party is asserting]; Evid. Code, § 115 [except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence].)

court further found it was in Nickolas's best interest to place him in a foster home with appropriate support, structure and therapeutic resources.

These findings constitute a compelling reason for finding that return home was not in Nickolas's best interest. The record clearly shows[8] that B.T. did not want to participate in reunification services designed to allow Nickolas to safely return to her care;[9] she did not visit him more than once a year, despite being offered financial assistance to do so; she made it clear she believed that Nickolas was lying about having been physically abused, despite medical and other evidence to the contrary, which resulted in a diminution of Nickolas's trust in her; she encouraged Nickolas's aunt to use corporal punishment on him; and she did not fully understand the nature and extent of Nickolas' emotional needs. In addition, there was no evidence to show that a plan of guardianship or adoption was available for Nickolas. (§ 366.3, subd. (h).)

The court did not abuse its discretion when it determined that Nickolas's best interest would be better served by continued placement in long-term foster care with a highly qualified caregiver, with appropriate structure, support and therapeutic resources. Thus, on this record, we cannot conclude there has been a miscarriage of justice necessitating reversal. (Cal. Const., art. VI, § 13.)

---

[8]    To the extent the court failed to make an express finding under section 366.3, subdivision (h), the record clearly supports a finding there was a compelling reason for finding that return home was not in Nickolas's best interest. (See *In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1825 [where trial court has failed to make express findings the appellate court generally implies such findings only where the evidence is clear].)

[9]    B.T. may ask the court to set a postpermanency review hearing at any time and request family reunification services. (§ 366.3, subds. (d)(1), (f).)

DISPOSITION

The order is affirmed.

                                                                    HALLER, J.

WE CONCUR:

BENKE, Acting P. J.

IRION, J.