Filed 10/1/21

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| FOLSOM POLICE DEPARTMENT et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>M.C.,<br><br>Defendant and Respondent. | C091173<br><br>(Super. Ct. No. 34-2019-20000415-MH-OM-GDS) |

APPEAL from a judgment of the Superior Court of Sacramento County, Stephen P. Acquisto, Judge. Reversed.

Steven Wang, City Attorney, Sari Myers Dierking, Assistant City Attorney; Richards, Watson & Gershon, T. Peter Pierce and Robert B. Pierce for Plaintiffs and Appellants.

Law Offices of Jonathan C. Turner, Jonathan C. Turner; Seiler Epstein and George M. Lee for Defendant and Respondent.

1

Appellants Folsom Police Department and City of Folsom (collectively, Folsom) appeal a trial court's order denying a petition filed under Welfare and Institutions Code section 8102[1] for authorization to dispose of firearms that were confiscated from respondent M.C. after police officers detained M.C. for psychiatric evaluation under a section 5150 involuntary hold. The trial court denied the petition, relying on *City of San Diego v. Kevin B.* (2004) 118 Cal.App.4th 933 (*Kevin B.*) for the proposition that Folsom had no authority to petition for such authorization, as M.C. was not "evaluated" during the involuntary hold.

Folsom contends the trial court erred when it relied on *Kevin B.* to deny the petition. We conclude the trial court's ruling was in error. We will vacate the trial court's ruling and remand for a hearing on the merits.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

Around 4:00 p.m. on July 16, 2019, Folsom police officers responded to the offices of a mental health provider in Folsom, California, where they spoke to an employee who said that M.C. -- who was being seen at the office "for anger management," and who "gets agitated easily" -- came to the office earlier that afternoon because he thought he had an appointment. When the employee told M.C. that he did *not* in fact have an appointment that day, M.C. replied, " 'Well, I guess I will shoot myself in the head,' " and departed.

About one hour later, after they learned that M.C. had a permit to carry a concealed weapon and possessed several registered firearms, police detained M.C. inside

---

[1]     All further statutory references are to the Welfare and Institutions Code.

[2]     On December 17, 2020, we denied Folsom's motion for calendar preference. Folsom's motion for judicial notice filed in support of the motion for calendar preference, filed on December 10, 2020, is denied as moot.

his car. Officers took possession of a loaded firearm that M.C. was carrying, and told M.C. why they detained him.

In a declaration, an officer summarized M.C.'s statement to police when he was detained: " 'I totally understand why you guys are doing what you are doing. I figured when I saw the police car flip around something was up. Yeah, I told the lady at the psych hospital I was going to shoot myself in the head. I got really upset because I thought I had an appointment today. I do not want to hurt myself. I just said it because I was upset. You can search my vehicle; I do not have any weapons in there just my clothes. I am in between houses right now and kind of living out of my car. I understand why you guys want to take my guns. I will sign the form and I will give you consent to go to [an acquaintance's] house and pick [the guns] up.' "

During the detention, police learned that on June 9, 2019, M.C.'s wife called the Folsom Police Department after M.C. got angry because he thought she was cheating on him. M.C.'s wife reported that M.C. "aggressively follow[ed]" her in his vehicle, prompting her to drive into the Folsom Police Department parking lot for safety.

A Folsom police officer concluded M.C. "posed a significant danger to himself and/or others," and told M.C. "he was going to be placed on a 72-hour mental health evaluation hold," under section 5150. M.C. "agreed to surrender" his other firearms (25 more), which police later retrieved at a home belonging to an acquaintance.

In the meantime, an officer took M.C. to a hospital and completed a form explaining the reasons for his decision to detain M.C. pursuant to section 5150.

Hospital records indicate M.C. arrived just after 5:00 p.m. for an "[i]nvoluntary [h]old [s]tatus [a]ssessment." Around 11:00 p.m., a medical doctor concluded that outpatient care was "the most appropriate and least restrictive option" for M.C. The doctor observed that M.C.'s "presentation and history [were] consistent with the diagnosis of adjustment disorder with depressed mood," and it was "possible" that M.C. had "frustration tolerance issues as well as anger management problems." The doctor

3

explained it "appeare[d] that [M.C.'s] clinic erred on the side of safety [by] calling the police," as M.C. "made a comment out of frustration." "The patient is not an imminent danger to self or others at this time and does not meet the legal criteria for involuntary admission," the doctor concluded.

M.C. was immediately released thereafter.

In August 2019, Folsom filed a petition asking the trial court to authorize it to lawfully dispose of M.C.'s firearms, pursuant to section 8102.

In later briefing, Folsom argued "releasing the weapons . . . to [M.C.] pose[d] a danger to his safety and to the safety of others." Folsom asserted that M.C.'s "release[] from the involuntary hold by . . . [h]ospital staff on the same day as the incident" "should not dictate the outcome" of the petition, because "several statements" by M.C., as reported by the doctor who recommended his release: (i) "contradict[ed] the facts known to [the] officers, including what [M.C.] . . . stated to the officers" on July 16, 2019, and (ii) contradicted the "recent history between," M.C. and his wife, specifically the June 9, 2019, incident. Folsom further maintained that the doctor's "assessments . . . document[ed] valid concerns about [M.C.'s] mental health."

In his briefing, M.C. argued that, because "there was no 5150 hold," "[s]ection 8102 was not triggered," and M.C.'s "right to possess firearms [was] fully intact." And "[e]ven . . . if there *were* a 5150 hold" in his case, M.C. argued, Folsom did not meet its burden of proof under the statutory scheme. (Italics added.)

In October 2019, after hearing oral argument but refusing to allow witness testimony, the trial court denied Folsom's petition, explaining: "Folsom ha[d] no authority under section 8102 to petition the court for an order authorizing it to destroy the confiscated firearms because [M.C.] was not placed on a 5150 hold. Accordingly, the court lack[ed] the authority to consider any evidence Folsom was prepared to present at the hearing to show that returning the firearms to [M.C.] would likely endanger him or others."

4

The trial court relied on *Kevin B.* in making its ruling. In the trial court's view, *Kevin B.* stands for the proposition that "a trial court has no authority to conduct a forfeiture hearing under section 8102 unless [a person is] both assessed *and* evaluated during an involuntary hold in a mental health facility under section 5150." And since the "initial assessment" of M.C. "concluded that he . . . did not meet the criteria for involuntary admission," "[M.C.] was not placed on a 5150 hold or evaluated, as required for the forfeiture provisions of section 8102 to have been triggered."

Folsom timely appealed.

## DISCUSSION

### I

### Relevant Statutory Provisions

"Sections 5150 and 5151 permit a person to be taken into custody and detained for 72 hours when there is probable cause he or she is a danger to himself or others as a result of a mental disorder. [Citation.]" (*People v. Jason K.* (2010) 188 Cal.App.4th 1545, 1552, fn. omitted.)

The version of section 5151 in effect at the time of defendant's detention read:[3] "Prior to *admitting* a person to the facility for treatment and evaluation pursuant to Section 5150, the professional person in charge of the facility or his or her designee shall *assess* the individual in person to determine the appropriateness of the involuntary detention." (Former § 5150, italics added; Stats. 2013, ch. 567, § 7.)

Section 5152, subdivision (a) provides in relevant part: "Each person admitted to a facility for 72-hour treatment and evaluation under the provisions of this article *shall*

---

[3] Assembly Bill No. 3242's amendments to the statute are not relevant to the issues before us. (Assem. Bill No. 3242 (2019-2020 Reg. Sess.), eff. Jan. 1, 2021; see Stats. 2020, ch. 149, § 3.)

5

*receive an evaluation as soon as possible after he or she is admitted . . . .*" (Italics added.)

"Two firearm statutes come into play when a person is detained under section 5150 as a danger to himself or others.  Section 8103 will prohibit his possession of firearms for a five-year period.  Section 8102 authorizes confiscation of any weapons he already possesses." (*People v. Keil* (2008) 161 Cal.App.4th 34, 37.)

Section 8103's *prohibition* is triggered when a person "has been (i) taken into custody as provided in [s]ection 5150 because that person is a danger to himself, herself, or to others, (ii) assessed within the meaning of [s]ection 5151, and (iii) admitted to a designated facility within the meaning of [s]ections 5151 and 5152 because that person is a danger to himself, herself, or others." (§ 8103, subd. (f)(1)(A).)

"[T]he individual may request a hearing to lift this prohibition.  [Citations.]  The People 'bear the burden of showing by a preponderance of the evidence that the person would not be likely to use firearms in a safe and lawful manner.'  (§ 8103, subd. (f)(6).)" (*People v. Jason K.*, *supra*, 188 Cal.App.4th at p. 1553.)

*Confiscation* under section 8102 is triggered "[w]henever a person, who has been detained or apprehended for examination of his or her mental condition . . . is found to own, have in his or her possession or under his or her control, any firearm whatsoever, or any other deadly weapon." (§ 8102, subd. (a).)

Section 8102 requires a "law enforcement agency [to] make the firearms available for return *unless* it timely files a petition to determine whether returning them 'would be likely to result in endangering the person or others, and . . . send[s] a notice advising the person of his or her right to a hearing on this issue.'  [Citations.]  Section 8102 thus 'places the onus upon law enforcement to initiate the forfeiture proceeding.' " (*City of San Diego v. Boggess* (2013) 216 Cal.App.4th 1494, 1500 (*Boggess*), italics added.)

Section 8102, subdivision (b)(1) states in relevant part:  "Upon confiscation of any firearm or other deadly weapon from a person who has been detained or apprehended for

examination of his or her mental condition, the peace officer or law enforcement agency shall issue a receipt describing the deadly weapon or any firearm and listing any serial number or other identification on the firearm and shall notify the person of the procedure for the return, sale, transfer, or destruction of any firearm or other deadly weapon which has been confiscated."

Section 8102, subdivision (c) states in relevant part:  "Upon the release of a person as described in subdivision (b), the confiscating law enforcement agency shall have 30 days to initiate a petition in the superior court for a hearing to determine whether the return of a firearm or other deadly weapon would be likely to result in endangering the person or others, and to send a notice advising the person of his or her right to a hearing on this issue."

## II

### *Kevin B.* Opinion

In *Kevin B.*, the Fourth Appellate District, Division One, held the trial court erred in granting a section 8102 subdivision (c) petition to destroy firearms that belonged to a man who, while "subject to detention under section 5150," was "never taken into custody by the police."  (*Kevin B., supra*, 118 Cal.App.4th at pp. 936-937.)  "Because [the man] was never assessed or evaluated, city had no power to bring a petition under section 8102, subdivision (c)," the court explained.  (*Id.* at p. 943, fn. omitted.)

In reaching its ruling, the court discussed certain "constitutional and practical considerations"[4] undergirding its "literal reading of . . . the statutory scheme" regarding

---

[4]     The constitutional issue that *Kevin B.* considered was "the requirements of substantive due process," analyzed in *Rupf v. Yan* (2000) 85 Cal.App.4th 411.  (*Kevin B., supra*, 118 Cal.App.4th at p. 941.)  The practical issue that *Kevin B.* considered was the notion that, "unless the power to confiscate and forfeit weapons is closely tethered to the assessment and evaluation required by section 5151 and 5152, a risk arises that weapons will be taken from law-abiding citizens who in fact are not a danger to themselves or others," because "[a]bsent assessment and evaluation by trained mental health

7

confiscation of firearms under section 8102. (*Kevin B., supra*, 118 Cal.App.4th at p. 941; see *id.* at pp. 941-942.)

Regarding its reading of the statutory scheme, the court explained: "[I]t is not possible to read these provisions as permitting the forfeiture of firearms or weapons where a person has not received an assessment *and* evaluation of his or her mental condition. The only authority permitting forfeiture is section 8102, subdivision (c). By its terms section 8102, subdivision (c), only applies to people who have been released as described in section 8102, subdivision (b). Section 8102, subdivision (b), only refers to people who have had weapons confiscated under section 8102, subdivision (a). By its terms section 8102, subdivision (a), *permits confiscation of weapons only of persons who have been apprehended or detained under section 5150 or who have been evaluated in some fashion by a mental health professional.* As we have noted, a person detained under section 5150 *must be both* assessed at the time of admission to a mental health facility *and evaluated if admitted.* The requirement of such professional assessment and evaluation is of course logical in light of the fact that law enforcement officers initiating the process are not required to definitively determine whether a person is dangerous, but only whether there is probable cause to believe a person is dangerous." (*Kevin B., supra*, 118 Cal.App.4th at p. 941.)

III

Analysis

Folsom contends the trial court erred when it relied on *Kevin B.* to deny Folsom's petition, as M.C. "was apprehended, detained, and assessed by a doctor," whereas the individual in *Kevin B.* was never contacted by law enforcement or medical professionals.

---

professionals, the seizure and loss of weapons would depend solely on the necessarily subjective conclusion of law enforcement officers who may or may not have the mental health training and experience otherwise available at a designated mental health facility within the meaning of section 5150." (*Id.* at p. 942.)

8

M.C. argues the trial court properly ruled under *Kevin B.* that since he was "never admitted" and therefore "never 'evaluated,' within the meaning of sections 5151 and 5152 [subdivision] (a)," section 8102, subdivision (c), "did not apply" to him.

Further, M.C. warns that reversal of the trial court's ruling may lead to a "constitutionally suspect" scenario: "a person is not admitted for evaluation because they are found not to be a danger to themselves or to others, and the police decide they simply wish to keep the firearms anyway." (Italics omitted.) But as Folsom observes, M.C. did not raise any constitutional concerns in his briefing in the trial court. We will not consider such arguments for the first time on appeal. (See *Neil S. v. Mary L.* (2011) 199 Cal.App.4th 240, 254 [" ' "Typically, constitutional issues not raised in earlier civil proceedings are waived on appeal." ' "]; *Hepner v. Franchise Tax Bd.* (1997) 52 Cal.App.4th 1475, 1486 ["In civil cases, constitutional questions not raised in the trial court are considered waived."].)

Under de novo review, we conclude the trial court's ruling was in error. (See *United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.* (2018) 4 Cal.5th 1082, 1089 [correct interpretation of a statute is an issue of law, which courts review de novo].) The trial court erred when it ruled that it had no authority to conduct a forfeiture hearing under section 8102 because M.C. had not been both assessed and evaluated during an involuntary hold under section 5150. Section 8102 does not so require.

We agree with *Kevin B.*'s holding that, under the plain language of section 8102, if someone were never detained or apprehended for examination of his or her mental condition, a law enforcement agency would have "no power to bring a petition under section 8102, subdivision (c)," as that provision explicitly contemplates such petitions within 30 days of the "release" of such persons. (*Kevin B., supra*, 118 Cal.App.4th at p. 943; see § 8102, subd. (c) ["Upon the *release of a person as described in subdivision (b)*, the confiscating law enforcement agency shall have 30 days to initiate a petition in the superior court for a hearing to determine whether the return of a firearm or other

deadly weapon would be likely to result in endangering the person or others," (italics added)]; § 8102, subd. (b)(1) ["Upon confiscation of any firearm or other deadly weapon from *a person who has been detained or apprehended for examination of his or her mental condition*," (italics added)].)

But *Kevin B.*'s holding does not support the ruling on review -- that the trial court could not even consider Folsom's petition, because M.C. was not assessed and evaluated. While there is language in *Kevin B.* that appears to suggest that only assessment and evaluation triggers the confiscation provisions of section 8102, that language is dicta, as it was unnecessary to the decision, since Kevin B. was never even detained.[5] (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 620 ["An appellate decision is not authority for everything said in the court's opinion but only 'for the points actually involved and actually decided.' "]; *Serrano v. Aerotek, Inc.* (2018) 21 Cal.App.5th 773, 784 [concluding a decision of another Court of Appeal was "not authority for the proposition"

---

**5**     And that dicta does not reflect "compelling logic" in our opinion. (*Smith v. County of L.A.* (1989) 214 Cal.App.3d 266, 297.)

We disagree with the *Kevin B.* court's reasoning that "the power to confiscate and forfeit weapons" should be "closely tethered to the assessment and evaluation required by section 5151 and 5152," because of (i) the "risk . . . that weapons will be taken from law-abiding citizens who in fact are not a danger to themselves or others," and (ii) "the seizure and loss of weapons would depend solely on the necessarily subjective conclusion of law enforcement officers." (*Kevin B., supra*, 118 Cal.App.4th at p. 942.)

The temporary *confiscation* of weapons -- as *mandated* by section 8102, subdivision (a) -- is not inconsistent with constitutional principles. (Cf. *Boggess, supra*, 216 Cal.App.4th 1503-1506 [§ 8102 "has procedural devices and burdens set in place to remedy constitutional deficiencies" and United States Supreme Court cases post-dating *Kevin B.* that clarify the contours of the Second Amendment right to bear arms "do not alter" § 8102's "validity" or California's right to "enforce the law to protect the health, safety and welfare of its citizens"].) And the unwanted *forfeiture* of weapons under the statute does *not* "depend . . . on the . . . conclusion of law enforcement officers," but upon determinations made by a judge after an adversarial hearing.

a party cited it for, as that portion of the decision was "undoubtedly dictum," because it was a statement of a principle that was not necessary to the decision], disapproved on another point of law in *Donohue v. AMN Services, LLC* (2021) 11 Cal. 5th 58, 77.)

Here, by contrast, M.C. *was* detained (and assessed, but not evaluated) and then released, satisfying the threshold requirement of section 8102, subdivision (c). Accordingly, we conclude the trial court's ruling was in error.

M.C. maintains that any error was harmless, as "[t]here is no evidence in the record that the trial court did not consider" officer declarations that were filed in support of the petition, and "that testimony was insufficient to carry" Folsom's burden.

Folsom contends the record reflects the trial court *did* refuse to consider the officer declarations, and that such error was "structural and reversible per se." Folsom further contends that, even under a harmless error analysis, we should remand because we should not make factual findings in the first instance.

We conclude the harmless error analysis is inappropriate in this circumstance, where the record reflects the trial court's threshold erroneous ruling lead to a *refusal to consider* any evidence on the dispositive factual question (whether the return of M.C.'s firearms to him would be likely to result in endangering him or others). (See *In re Valerie A.* (2006) 139 Cal.App.4th 1519, 1521 ["Since the court excluded all evidence and refused to consider the issue, we cannot apply a harmless error analysis to this case."].)

On remand, the trial court will be able to consider " 'whether the circumstances leading to the section 5150 detention might occur again and whether possession or control of those confiscated weapons in such circumstance would pose a risk of danger to [M.C.] or to others.' " (*Boggess*, *supra*, 216 Cal.App.4th at p. 1502, quoting *Rupf v. Yan*, *supra*, 85 Cal.App.4th at p. 424.)

## DISPOSITION

The judgment (order) is vacated.  The matter is remanded so that the trial court may consider Folsom's petition on the merits.  Costs on appeal are awarded to Folsom. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


/s/
HOCH, J.


We concur:


/s/
ROBIE, Acting P. J.


/s/
KRAUSE, J.