Filed 6/3/25  In re T.T. CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re T.T., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,  Plaintiff and Respondent,  v.  T.T.,  Defendant and Appellant. | A169409 & A170438  (Contra Costa County Super. Ct. No. J22-00356) |

T.T. (Minor) argues the juvenile court abused its discretion in committing him to a secure youth treatment facility (Welf. & Inst. Code, § 875)[1], namely, the Secure Pathway of the Briones Youth Academy (hereafter, Secure Pathway or Secure Track).  We affirm.

BACKGROUND

*Jurisdiction*

Following a contested jurisdictional hearing, the juvenile court found true allegations that Minor committed robbery and that a principal was

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

1

armed with a firearm during the commission of the offense. As relevant here, the evidence presented at the jurisdictional hearing and summarized in the probation report established that Minor and his cousin attempted to rob a man at a mall on the afternoon of December 31, 2021. When another man tried to stop the robbery, Minor's cousin shot him. The shooting victim subsequently died from his injuries.

*Probation Report*

A probation report submitted in advance of the October 2023 disposition hearing quoted Minor describing his cousin and co-responsible as " 'like a brother.' " Minor characterized his family as supportive and loving. Prior to entering juvenile hall, Minor had struggled with school attendance and completing assignments. Minor was diagnosed with ADHD but discontinued taking medication because of the side effects. Minor denied drug or alcohol use.

In September 2019, a juvenile court had sustained allegations of misdemeanor resisting a peace officer and possession of a stolen vehicle, based on an armed carjacking Minor committed with his cousin and co-responsible in the instant case. While on probation for the 2019 case, Minor completed "Functional Family Therapy" with his family, wrote an apology letter to the victims, and completed community service hours. In March 2020, Minor was arrested after being found with other juveniles in a vehicle that contained three loaded firearms. A probation violation was filed but later dismissed, and Minor successfully completed probation in January 2021.

At the time of the probation report, Minor had been in juvenile hall for well over a year. While in juvenile hall, he had graduated high school and was taking college classes. He performed well in his classes and had

2

excellent behavior for the vast majority of his time at juvenile hall.  However, there were notable exceptions in the months before the disposition hearing: on two separate days in June 2023, Minor argued with juvenile hall staff and, after he was admonished for arguing, yelled and cursed at staff members.  On one of these days, Minor also was involved in a physical fight with another youth.

Regarding placement, the probation report stated: "In the instant offense, [Minor] sustained a 707(b) offense for participating in a robbery that resulted in a fatality.  In what appears to have been a premeditated act, [Minor] and his co-responsible entered a shopping mall on New Year's Eve in the middle of the day and put many innocent citizens at risk for injury and/or loss of life.  The serious nature of the instant offense indicates [Minor] needs a high level of intervention. . . . [¶] A commitment to the BYA-Secure Pathway will afford [Minor] the opportunity to participate in CORE Evidence Based groups designed to address criminal behavior and distorted thinking, in addition to intensive programming through Trauma Recovery Groups, Free Your Mind, Life Skills, Choices, Interactive Journaling, and Victim Empathy.  Further, he will have the opportunity to continue his college education and/or participate in the MC3 12-month vocational program, creating a solid foundation for this 18-year-old to return to the community."

The probation report provided additional information about the Briones Youth Academy and Secure Pathway: "The objective of the BYA is to provide individualized treatment, utilizing cognitive behavioral treatment, as well as best practices, to help guide youth in their social-emotional development. The BYA programming will utilize a holistic approach to create a rehabilitative environment through collaboration with the community, family, mental/behavioral health, and education, while offering the minor life

3

skills designed to promote vocational and educational success beyond the term of commitment.  The goal is to expose the root of delinquent behavior through a variety of classes, activities and exercises offered with the structure, guidance and support of Probation and the mental health team, in a safe and secure environment, local to the minor and family.  The BYA consists of four progressive levels: Root, Forest, Mountain, and Peak Levels.  Youth progress to the next level based on their Individualized Rehabilitation Plan (IRP) and completion of goals established in their IRP.  On the Secure Track, the services included in the IRP are expanded to address the more intensive and sophisticated criminogenic treatment needs for youth who have committed the most serious, violent, and dangerous felonies.

"The Root Level will be the minor's orientation to BYA.  In the Forest Level, the minor will begin his core evidence-based treatment classes.  In the Mountain Level, the minor will participate in vocational classes and college course work, while continuing evidence-based coursework.  The Peak Level is the final level in BYA, where the minor will continue to participate in treatment, vocational, and educational classes, with a greater emphasis on demonstration of learned concepts, and preparing the minor for successful transition to the community.  Upon reaching Peak Level on the Secure Track, youth will earn more privileges, and have the opportunity to demonstrate what they have learned on a transitional unit, where they will prepare for successful reintegration into the community using a phased approach."

The probation report concluded, "Indefinite Wardship with a commitment to the BYA Secure Pathway is recommended, in order for the youth to receive intensive treatment services.  Should the youth be committed to BYA, the youth will undergo an assessment period of 14 days, during which time a variety of assessments and tools designed to

4

individualize treatment are completed. A multi-disciplinary team review will further aid in the creation of a rehabilitation plan within the first 30 days of commitment. [¶] Dependent on the outcome of these assessments, the resulting rehabilitation plan could include an assortment of evidence-based classes such as Trauma Recovery Groups, Free Your Mind, Life Skills, Choices, Interactive Journaling. and Victim Empathy. Additionally, the youth will be afforded the opportunity to continue his college education and participate in the MC3-12 vocational program. [¶] In addition, youth on the Secure Track of BYA would attend a hearing every six months, where the Court will be updated on the minor's progress and have the authority to extend or reduce the youth's baseline terms dependent on the youth's progress."

*Minor's Evidence*

Minor submitted two exhibits. The first was described by counsel as "the Briones Youth Academy handbook," authored, as identified on its cover, by the Contra Costa County Probation Department.[2] This handbook explained, "The Court will order a youth to the Briones Youth Academy to one of three pathways. The three pathways are the Secure Pathway, Commitment Pathway, and Community Pathway."[3] The Secure Pathway consists of four levels—Root, Forest, Mountain, and Peak—and "is governed by Senate Bill 92.[4] The Court will determine a baseline term for a youth.

---

[2] The People did not object to the handbook's admission or contest its authenticity.

[3] The Community Pathway is not at issue in this appeal.

[4] Senate Bill No. 92 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 18, § 12) added section 875, which established secure youth treatment facilities as the most restrictive placement for juvenile wards.

Within 30 days of commitment, an Individualized Rehabilitation Plan will be developed. [¶] Youth will attend a Court Review hearing every six months where the Court will be updated on the youth's progress. During reviews, the Court has the authority to extend or reduce the baseline term by six months." The Commitment Pathway "is a three-level program [(Root, Forest, and Mountain)] where youth will receive an Individualized Rehabilitation Plan. The time spent within the Commitment Pathway is determined by the youth's successful completion of each level which can typically be accomplished within a period of 10 to 12 months. In addition, while youth successfully work through the levels of the program, they must demonstrate an understanding of the skills and tools taught in the cognitive behavioral treatment classes." The handbook included descriptions of numerous treatment programs that youth may be assigned, including many of the ones identified in the probation report as relevant to Minor's needs.

Minor's second exhibit was a social history and assessment prepared at Minor's request by a social worker and former juvenile probation officer. The report described Minor's exposure to "a significant amount of loss and trauma" during childhood, including, at seven years old, seeing his cousin dead in the street after she was killed by crossfire, and, at 11 years old, walking next to another cousin when she was hit by a car and killed. The report discussed Minor's ADHD diagnosis when he was six years old, admission to a psychiatric hospital after threatening to kill himself when he was ten years old, and multiple school suspensions for fighting and disruptive behavior. The report opined that, although Minor's relationship with his family is strong, Minor did not receive the emotional and mental health intervention needed during his childhood.

6

The report noted that the family therapy program provided during Minor's prior probation inaccurately stated Minor and his family had no history of trauma or mental illness. While "fragile progress" was made during the program, no resources were provided after discharge in May 2020. During the pandemic, Minor began spending more time on social media with negative peers.

When Minor first began school in juvenile hall, his performance and behavior were poor, but they significantly improved during his time there and he earned a 4.0 grade point average during his last three quarters. Minor had also recently begun regular therapy sessions.

The report concluded that Minor "has survived significant adversity throughout his life and has demonstrated a potential for growth, conscientious thinking and ultimately, rehabilitation. . . . [Minor's] marked response to his current rehabilitative programming not only indicates a readiness for change but an amenability to services provided at The Briones Youth Academy (BYA). The developmentally appropriate and evidence[] based services offered through BYA appear to align with [Minor's] current needs and stage of development. These services include, but are not limited to, a myriad of assessment tools, an assigned Multi-Disciplinary Team (MDT), and family-centered and trauma informed therapeutic planning and interventions. By affording [Minor] these services, he will have the opportunity to continue on his established path toward rehabilitation."

*Disposition Hearing Arguments*

The People agreed with the probation report's recommendation of Secure Pathway, and the probation department submitted on their report.

Minor's counsel requested the court commit Minor to the Commitment Pathway instead of the Secure Pathway. Counsel argued the handbook

reveals "the small differences between the Secure Track program and the Commitment Track program in terms of programming offered and the depth of treatment that is available to youth," and noted that youth in the two tracks "are housed on the same unit, they program together, and they complete mostly the same programs." The probation department had told counsel Secure Pathway youth take both Thinking for a Change and Aggression Replacement Therapy, while Commitment Pathway youth take one or the other, but counsel represented that she had clients in Commitment Pathway who had been ordered to take both. The probation department had also told counsel there were two additional Secure Pathway programs—Free Your Mind and Interactive Journaling—but counsel argued that if those programs were needed to address Minor's treatment needs, he could be ordered to complete them in Commitment Pathway.

*Decision*

The juvenile court began by discussing Minor's performance in juvenile hall and finding his positive change and work there "significant." The court considered the severity of the offense and found that while Minor was not the shooter, "[g]iven your close relationship with your cousin, I do find your role in the incident significant as well. This was someone who seems more like an equal partner to you, . . . and you both committed this crime, knowing that he was armed and what that could mean, what the purpose of that was." The court considered Minor's previous delinquency history and found "the adequacy and success of previous [rehabilitative] attempts, was insufficient, and so that weighs in favor of a Secure Track commitment." The court also found significant Minor's "concerning behavior" in juvenile hall a few months prior to the disposition hearing. The court concluded, "[M]y concern is that, in the past, you have engaged in services, and I want to make sure that this

time, we are not just checking boxes and that you are really internalizing what you need to internalize, not just when the pressure is on, but also when no one is watching."

The juvenile court committed Minor to Secure Pathway, with a maximum term of four years or age 23, whichever occurred first, and a baseline term of three years.  Minor appeals from this order (case No. A169409).[5]

DISCUSSION

"We review the [juvenile] court's placement decision for an abuse of discretion.  [Citation.]  We review the court's findings for substantial evidence, and ' "[a] trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence." ' " (*In re Nicole H.* (2016) 244 Cal.App.4th 1150, 1154.)

"Section 875 . . . governs the commitment of juvenile wards to the secure youth treatment facilities that have replaced the Division of Juvenile Justice (DJJ) as the most restrictive placement alternative."[6] (*In re Tony R.* (2023) 98 Cal.App.5th 395, 406.)  The provision authorizes such placements if, among other findings, "[t]he court has made a finding on the record that a

---

[5] Minor filed a second appeal from an order issued following an April 2024 six-month review hearing (case No. A170438).  We granted Minor's unopposed motion to consolidate the two appeals for briefing, oral argument, and decision.  Because Minor's briefs raise no challenges to the six-month review order, we omit background facts relating solely to that order.

[6] A secure youth treatment facility "shall be a secure facility that is operated, utilized, or accessed by the county of commitment," and "may be a stand-alone facility, . . . or may be a unit or portion of an existing county juvenile facility, including a juvenile hall or probation camp, that is configured and programmed to serve" the targeted population.  (§ 875, subd. (g)(1)–(2).)

9

less restrictive, alternative disposition for the ward is unsuitable." (§ 875, subd. (a)(3).) The statute sets forth criteria to be used in making this finding: "(A) The severity of the offense or offenses for which the ward has been most recently adjudicated, including the ward's role in the offense, the ward's behavior, and harm done to victims. [¶] (B) The ward's previous delinquent history, including the adequacy and success of previous attempts by the juvenile court to rehabilitate the ward. [¶] (C) Whether the programming, treatment, and education offered and provided in a secure youth treatment facility is appropriate to meet the treatment and security needs of the ward. [¶] (D) Whether the goals of rehabilitation and community safety can be met by assigning the ward to an alternative, less restrictive disposition that is available to the court. [¶] (E) The ward's age, developmental maturity, mental and emotional health, sexual orientation, gender identity and expression, and any disabilities or special needs affecting the safety or suitability of committing the ward to a term of confinement in a secure youth treatment facility." (§ 875, subd. (a)(3).)

Minor argues the juvenile court abused its discretion in finding Secure Pathway the least restrictive placement. Minor first contends the severity of the offense does not warrant the placement because Minor was not the shooter and there was no evidence he possessed a weapon. There was evidence that Minor characterized the shooter as like a brother and the two had previously committed crimes together. The juvenile court could reasonably infer that Minor knew the shooter had a firearm when they committed the robbery and further knew the shooter might use it. That a different inference could have been drawn is immaterial. (*Rupf v. Yan* (2000) 85 Cal.App.4th 411, 429, fn. 5 [" 'So long as there is "substantial evidence," the appellate court *must affirm* . . . even if the reviewing justices personally

10

would have ruled differently had they presided over the proceedings below, and even if other substantial evidence would have supported a different result' "].)  The juvenile court did not abuse its discretion in finding this factor weighed in favor of Secure Pathway.

Minor next contends his overall progress in juvenile hall and the inadequacy of the services he received in his prior delinquency case should outweigh his recent incidents of arguing and cursing at juvenile hall staff. The court considered all of these factors and Minor fails to establish any abuse of discretion in how the court weighed them.

Finally, Minor contends there is no evidence that Secure Pathway is the least restrictive placement because essentially the same programming is offered to youths in Commitment Pathway.[7]  The record demonstrates that both offer programming that would address Minor's needs, but the Secure Pathway programming is more intensive and longer, including a fourth level to assist youth in transitioning back to the community.  The juvenile court could reasonably find that the less intensive Commitment Pathway would not be sufficient in light of the relevant factors, most notably the seriousness of the offense and Minor's delinquency and rehabilitation history.  *In re Carlos J.* (2018) 22 Cal.App.5th 1, relied on by Minor, is easily distinguishable because in that case, there was "*no* specific information in the record regarding the programs" in the most restrictive placement (*id.* at p. 4, italics added).

## DISPOSITION

The orders are affirmed.

---

[7] Both parties assume Commitment Pathway is a less restrictive alternative to Secure Pathway.  For purposes of this appeal, we will do so as well.

SIMONS, J.

We concur.

JACKSON, P. J.
BURNS, J.

(A169409 & A170438)

12